486 P.2d 243

The STATE of Idaho, Plaintiff-Respondent,

v.

Larry Fred DAUGHERTY, Defendant-Appellant.

No. 10617.

Supreme Court of Idaho.

June 25, 1971.

May, May, Bennett & Sudweeks, Twin Falls, for defendant-appellant.

W. Anthony Park, Atty. Gen., and Martin R. Ward, Deputy Atty. Gen., Boise, for plaintiff-respondent.

SPEAR, Justice.

Appellant, Larry Daugherty, was tried and convicted of the crime of robbery in the district court, Twin Falls County. The trial and conviction, from which this appeal is taken, followed the events described below.

Appellant and the complaining witness, Neal Pastoor, had several drinks together in several Twin Falls bars on March 25, 1969. From the last bar they left with appellant driving Pastoor's pickup. After driving to another part of town, appellant stopped the pickup and removed Pastoor's ring, watch and billfold and then began to remove Pastoor's shoes. At this time the two began to fight. The fight continued outside the pickup and appellant seized a pitchfork, threatening and injuring Pastoor. Pastoor disarmed appellant, ran from the scene, and shortly thereafter

stopped a police car to report the robbery. Officer Mildon, the officer in the car, reported the robbery over the radio and the description of the victim's pickup, which the suspect had taken.

Officer Cameron, a second patrolman, saw the pickup after Mildon's radio report and followed it until it stopped. He recognized the driver as Larry Daugherty, appellant, and asked him to go down to the station with him. At the station it was determined that Daugherty had been driving with a suspended license, so he was placed under arrest on this charge and he received the *Miranda* warnings incident to this arrest.

Captain Lindell assumed the investigation of the robbery. Before actually confronting appellant, he took Pastoor to the room where Daugherty was being held to identify his assailant. Pastoor positively identified appellant as the man who had robbed him and remarked that the suspect was wearing his coat. Lindell testified that he then began questioning appellant about the robbery after having informed him that he was being arrested for robbery and again advising him of his rights. The other officers present when appellant was brought to the station, including Officer Mildon who was present when Lindell was conducting the interrogation, testified that as far as they knew appellant was not informed of the robbery charge or arrested or booked for robbery until the next day.

After Lindell commenced the questioning, he and the other officers searched Daugherty. This search revealed Pastoor's watch, ring, wallet and coat on the suspect's person.

Appellant contends that throughout the entire proceeding at the station the night of his arrest, he was never informed of any felony charges, advised of his rights except as in a misdemeanor case, furnished counsel at his "show up" identification, or advised that he was in a "show up."

A preliminary hearing was held April 25, 1969 before the justice of the peace and an information was returned charging appellant with robbery and assault with intent to commit murder.

On June 27, 1969 a sanity hearing was held pursuant to I.C. § 19-3302, resulting in a jury verdict that appellant was insane and unable to stand trial. In conformity with this verdict, appellant was sent to the State Hospital South and while there he was examined by psychiatrists and a psychologist with the result that he was found sufficiently sane to stand trial. Subsequently, he was returned to Twin Falls County to stand trial.

Trial was held on the charges of robbery and assault with intent to commit murder. After the jury was sworn appellant moved to strike the charge of assault with intent to commit murder, since the information failed to allege that the crime took place within this state, and also to suppress any testimony regarding this count. The district judge granted the motion striking the charge but denied the motion to suppress the testimony regarding assault. The prosecuting attorney requested, in the jury's presence, that the record be supplemented to show that this charge was dropped only because of a technical error in preparing the information. The request was refused. Appellant moved for a mistrial but this motion was denied.

The jury returned a verdict of guilty of robbery on September 25, 1969. On October 10, 1969, after hearing and denying a motion for a new trial, the district court sentenced appellant to not to exceed ten years in the Idaho Penitentiary.

Appellant assigns as error the trial court's failure to grant his motion to suppress all evidence obtained as a result of the alleged illegal search in the police station March 26, 1969. He also contends that the court erred in not granting his motion to be returned to state mental hospital. Appellant alleges that he was prejudiced by the trial court's not granting a mistrial because of the prosecutor's statements regarding the reason why the charge of assault with intent to commit murder was dismissed and also for not instructing

the jury to disregard any evidence relative to this charge. Appellant claims prejudice resulting from the prosecuting attorney's offering in evidence the records of the state hospital when he knew them to be inadmissible. Error by the trial court is alleged by not allowing appellant to introduce in evidence certain portions of the same records when Mr. Lake, the superintendent, allegedly testified from them.

Finally, appellant assigns as error the trial court's failure to grant a new trial and failure to order a free transcript of the sanity hearing so that the entire record could be brought to the Supreme Court.

Additionally, appellant argues that he was not afforded the proper protection at the interrogation stage. Even though under suspicion for the commission of a felony, he was arrested for a misdemeanor, interrogated, searched and articles unlawfully seized and later introduced in evidence. Also he argues that he should have been advised of his right to counsel at the time he was identified by Pastoor in the police station since this was in effect a "show up"—a critical stage in his criminal proceeding.

■ Appellant contends that his arrest for driving with a suspended license was a sham employed by the police solely for the purpose of discoverying evidence relative to the felony charge and was therefore illegal. Accordingly, any evidence discovered as a result thereof should have been suppressed. We have recently had occasion to review the admissibility of evidence found when officers of the law initially arrest on a charge substantially less serious than that actually under investigation in State v. Barwick, 94 Idaho 139, 483 P.2d 670 (1971). Having reviewed the arguments and record in this case, we find the type of police activity we found reprehensible in that case lacking here.

In *Barwick*, a substantial portion of the investigation, including a search and interrogation, was conducted subsequently to an arrest for vagrancy and before the suspect was either arrested for or informed of the felony of which he was suspected. We held there that where the initial arrest on the lesser charge was for the purpose of gathering evidence of the felony, the arrest was illegal as a sham and rendered all evidence disclosed as a result inadmissible. Even though appellant here was arrested on a misdemeanor charge prior to the investigation which revealed the incriminating evidence, that fact alone does not taint the entire investigation as in *Barwick*. The record in this case discloses some disagreement as to when the actual arrest for robbery transpired. Two officers testified that as far as they knew appellant was not informed of the robbery charge the night the investigation was being conducted at the police station and was not actually arrested on that charge until the next day. However, Captain Lindell who was in charge of the investigation after appellant's first arrest, testified consistently that he informed appellant that he was under arrest for *robbery* and informed him of his rights before either the interrogation or search actually commenced. Where only a short time has intervened between the arrest for the misdemeanor and the arrest on the felony charge, and the felony arrest preceded any interrogation or search relative to the felony charge, the characteristic of an arrest for the sole purpose of gathering evidence on another charge is not present. Under these circumstances, we deem that the district court properly denied appellant's motion to suppress.

■ Appellant also moved to suppress the evidence of his identification by the complaining witness in the police station. He contends that at the time he was viewed by Pastoor, he was subjected to a "show up" or "line up." Therefore, he argues, he should have been advised of the right to the presence of counsel to represent him, and since no such warning was given at this time, evidence of the identification was inadmissible at trial.

The United States Supreme Court has held that a "show up" may be a critical stage of the criminal proceeding requiring the presence of counsel. United States v.

Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967). However, the court in that case and in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), held that the presence of counsel as it affects the admissibility of the "show up" identification depends on the circumstances of each case. The determining factors all relate to the possibility for error in the identification and the extent to which the presence of counsel might have ameliorated this problem. Among the factors which the Court considered significant are in the Court's words:

"\* \* \* Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." 388 U.S. at 241, 87 S.Ct. at 1940.

The record before us discloses no infirmity in the nature of those discussed above. Pastoor spent most of the evening preceding the crime with appellant and had ample opportunity to observe him, and in addition, the "show up" identification was made a very short time after the crime. Further, the complaining witness remarked at the time of the identification and testified at trial consistently and without equivocation that Daugherty was the man who robbed him. Under these circumstances, we find no possibility that the identification was inaccurate nor that it was tainted by any suggestive quality of the circumstances of the confrontation. Additionally, we find that appellant's association with Pastoor for several hours during the eve-

ning preceding the robbery provided ample evidence to establish that the identification resulted from observations having an "independent origin exclusive of any connection with" events occurring in the police station. State v. Raine, 93 Idaho 862, 477 P.2d 104 (1970). Appellant's identification in the police station by the complaining witness provides no reason for reversal in this case.

■ Appellant's assignment of error that the trial court erred in failing to grant his motion to be returned to the State Hospital South is also without merit. He had been found to be insane by a jury and, shortly after his arrival at the State Hospital South, was certified as sane by the superintendent and returned to Twin Falls County for trial. Relying upon (1) the original verdict of insanity rendered by the jury, (2) the superintendent's statements that appellant's mental condition had not changed, and (3) the testimony of a psychiatrist, Dr. Briggs, at both the sanity hearing and the robbery trial that Daugherty was insane at both times, appellant contends that he should have been returned to the institution.

I.C. § 19–3306 provides:

"If the defendant is received into the asylum he must be detained there until he becomes sane. *When he becomes sane the superintendent must give notice of that fact to the sheriff and prosecuting attorney of the county.* The sheriff must thereupon, without delay, take the defendant from the asylum and place him in proper custody until he is brought to trial or judgment, as the case may be, or is legally discharged." (emphasis added)

Construing statutes similar to ours, the Supreme Court of California has held that the question of sanity, after commitment, is for the superintendent of the institution to determine and that it is proper to return the person so committed when the superintendent has determined that the person is sane. Ex Parte Phyle, 30 Cal.2d 838, 186

236

P.2d 134 (1947); People v. Superior Court of Contra Costa County, 4 Cal.2d 136, 47 P.2d 724 (1935), overruled or disapproved other grounds, People v. Fields, 42 Cal. Rptr. 833, 399 P.2d 369 (1965); People v. Gilbert, 25 Cal.2d 422, 154 P.2d 657 (1944). The procedure followed in the present cause complied with the statute and there was no error.

We also find appellant's assignment of error by the trial court in not allowing in evidence part of the records from the state hospital without merit. These records were originally offered by the prosecution but excluded on appellant's objection at trial. He cannot now object to the trial court's refusal to allow some of the same records in evidence when it had already determined that they were inadmissible on the basis of his objection. Furthermore, there is no indication in the record that the superintendent relied upon these records to refresh his memory during any of his testimony. Rather, it appears that Mr. Lake's testimony was entirely from memory.

Appellant also contends that the prosecutor's action in two instances during the trial prejudiced his case. The two instances to which he refers were the prosecutor's remarking on the reason for dismissing the assault charge and offering in evidence the records of the state hospital. No specific prejudice following these events appears to us in the record and appellant points to none. The possibility of any real prejudice resulting from these factors is remote and we find no cause for reversal here.

We have reviewed appellant's other assignments of error and find them without merit.

Conviction and judgment for the crime of robbery affirmed.

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.