511 P.2d 806

**The STATE of Idaho, Plaintiff-Respondent,**

**v.**

**John Lawrence SADLER and Ronald Glen Sever, Defendants-Appellants.**

**No. 10987.**

Supreme Court of Idaho.

May 21, 1973.

Brauner, Fuller & Doolittle, Caldwell, for appellant Sadler.

Gary L. Morgan, Caldwell, for appellant Sever.

W. Anthony Park, Atty. Gen., James G. Reid, Asst. Atty. Gen., Boise, C. Robert Yost, Pros. Atty. for Canyon County, Caldwell, for plaintiff-respondent.

BAKES, Justice.

In this appeal, appellants John Sadler and Ronald Sever are challenging their convictions of robbery in the district court of the Third Judicial District. The principal issue in their appeal involves the legality of a witness identification of appellants as perpetrators of the robbery. The witness made the identification at the police

station shortly after appellants were apprehended, and in the absence of counsel for appellants. Appellants contest the admissibility of evidence of this police station identification as a violation of their 6th amendment rights to counsel and in contravention of due process guarantees of the 14th amendment. Appellants also challenge the admissibility of an in-court identification of appellants made by the same witness, claiming that that identification was tainted by the illegal police station confrontation. In addition, appellant Sadler contends that the prosecution withheld information which would have aided Sadler in the preparation of his defense.

Prior to consideration of appellants' arguments, it is necessary to present an abridgment of the facts leading up to appellants' prosecution and the challenged identification.

At approximately 11:55 p.m. on March 6, 1971, Billy Firebaugh, the clerk of the Seven-Eleven Store on 12th Avenue in Nampa, was robbed by an armed man whose face was masked by a nylon stocking. Because of the mask, Firebaugh was not able to identify the robber but managed to observe his clothing and general physical build. Just prior to the robbery, Walden Downs, the proprietor of a service station located across 12th Avenue from the Seven-Eleven Store, had returned to his station to secure it for the night. On arriving, Downs noticed a car parked next to his station. At about 11:45, Downs watched the car move across 12th Avenue and stop in an alley behind the Seven-Eleven Store. Downs saw a man alight from the vehicle, "put something over his head," and enter the store. Downs thought the man pulled a gun on Firebaugh. Concluding that some criminal activity was occurring, Downs left his station in his late-model pickup and drove slowly down the alley behind the Seven-Eleven Store for the purpose of identifying the vehicle. On obtaining the license number of the car, Downs also endeavored to get a look at the occupants of the car. Downs observed two

males in the car—a driver and a passenger whom Downs saw remove something from his head on entering the car. At the trial Downs testified that he saw clearly the faces of both men as he passed the parked vehicle.

From the license number and a description of the vehicle which was supplied by Downs, the Nampa police were later able to locate and apprehend appellants while they were driving in the automobile described by Downs. The defendants were searched at the scene of the arrest. The search revealed no weapons, but the searching officers discovered that the appellants each had over $40 in small bills on their persons, approximately the amount alleged to have been taken in the robbery. Appellants were arrested on suspicion of robbery and were taken to the Nampa police station. The automobile which they were driving was impounded and approximately 12 hours later was searched by the officers, who had obtained a search warrant, and a .22 caliber revolver was found under the driver's seat.

After the arrest of appellants, approximately an hour after the robbery, Downs was summoned to the police station, apparently for the purpose of looking at suspect photographs. While at the station, Downs, his wife, and daughter were seated in a small room. Appellant Sadler, in handcuffs, was brought into the room by a police officer who asked Downs if he could identify Sadler. Downs replied that Sadler was the man he had seen as the passenger in the car parked behind the Seven-Eleven Store. The record is clear that Sadler was being physically restrained by the officer at the time Downs identified him. Downs was then asked to step outside the door in order to identify Sever as the driver of the car. Sever, also in handcuffs, was standing at the opposite end of the hall from Downs, flanked by two police officers. Downs likewise identified Sever as the driver of the automobile. Witness Downs stated that he talked to no one, nor had he been

briefed by any police officers prior to making the identifications. Downs did, however, state that while in the station he had overhead an officer say that "a car and a suspect car had been apprehended." Downs also noted that his wife, who had accompanied him to the police station, had mentioned that Sadler was "of the same build as the man that we watched go in" the Seven-Eleven Store.

Prior to the trial, both appellants filed motions to suppress evidence of the police station identification. The trial court, after an evidentiary hearing, denied the motions. In the course of the trial, Mr. Downs made an in-court identification of both appellants as the men he observed in a parked vehicle behind the Seven-Eleven Store the night of the robbery. This identification was likewise objected to by appellants. No reference to the police station identification was made by Downs. However, during the cross examination and subsequent re-direct examination of police officer Hupe, the police station identification was exposed and evidence of its outcome was also admitted.

In their appeal to this court, appellants level a two-pronged attack at the district court ruling concerning the legality of the police station identification. Appellants contend first that the evidence of the identification must be ruled inadmissible under the Wade-Gilbert *per se* exclusionary rule since the confrontation at which Downs identified the appellants occurred in the absence of appellants' counsel, an effective denial of their 6th amendment rights.[1] Second, and notwithstanding the right to counsel claim, appellants urge that the circumstances of the police station identification were unusually suggestive and unfair so as to amount to a denial of due process.

Fundamental to appellants' right to counsel claim are the landmark United States Supreme Court cases of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L. Ed.2d 1178 (1967). *Wade,* a federal criminal case, and *Gilbert,* a state prosecution stand—strictly speaking—for the proposition that a criminally accused is .entitled to have counsel present at post-indictment lineups. Failure to allow the presence of counsel subjects any evidence of the import of such identification to a *per se* exclusionary rule.[2] Although the actual holdings in *Wade* and *Gilbert* concerned only post-indictment lineups, the Court's opinions made it clear that all pretrial confrontations between the accused and the witnesses against him were subject to close scrutiny. United States v. Wade, *supra,* 388 U.S. at 227, 87 S.Ct. at 1932.

The recent United States Supreme Court case of Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), has settled the law in this area. In *Kirby,* the defendant was arrested for robbery and transported to the police station. An eye witness to the offense was called to the station where he identified the defendant as the perpetrator of the crime. No counsel was present at the identification procedure. Evidence of the police station identification as well as an in-court identification by the same witness was introduced at trial. Defendant was ultimately convicted and appealed to the Illinois appellate. court, which affirmed the conviction. The United States Supreme Court

---

1. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Coun-

sel for his defence." U.S.Const., amend. VI.

2. "Only a *per se* exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical lineup." Gilbert v. California, *supra,* 388 U.S. at 273, 87 S. Ct. at 1957.

granted certiorari on the limited question of whether the Wade-Gilbert *per se* exclusionary rule is applicable to pre-indictment confrontations. In a split decision, the Supreme Court declined to extend the Wade Gilbert right to counsel ruling to pre-indictment confrontations. The court noted that historically the right to counsel was mandatory "only at or after the time that adversary judicial proceedings [had] been initiated against them"—"whether by way of formal charge, preliminary hearing, indictment, information or arraingment." In the words of the court:

"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the Government has committed itself to prosecute, and only then that the adverse positions of Government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. See Powell v. Alabama, 287 U.S. 45, 66–71, 53 S. Ct. 55, 63, 77 L.Ed. 158; Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246; Spano v. New York, 360 U.S. 315, 324, 79 S.Ct. 1202, 1207, 3 L.Ed.2d 1265 (Douglas, J., concurring)." 92 S.Ct. at 1882.

As to confrontations prior to the initiation of the judicial criminal proceedings, such as we are faced with in the case at bar, the right to counsel guarantees of the 6th amendment are inapplicable. *See* State v. Daugherty, 94 Idaho 232, 486 P.2d 243 (1971). The *Kirby* case effectively disposes of appellants' contention that they must have been afforded the right to counsel at the police station confrontation with witness Downs.

■ Although appellants were not entitled to counsel at the police station identification, the opinion in *Kirby* makes manifest that appellants may nevertheless raise the issue of any police abuses in pretrial identification procedures. As stated in *Kirby:*

"As the Court pointed out in *Wade* itself, it is always necessary to 'scrutinize *any* pretrial confrontation. . . .' 388 U.S. at 227, 87 S.Ct. at 1932. The Due Process Clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402. When a person has not been formally charged with a criminal offense, *Stovall* strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime." 92 S.Ct. at 1883.

The effect of the *Kirby* ruling is to elevate the due process test articulated in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), to controlling stature in determining whether a confrontation prior to the commencement of formal judicial criminal proceedings is improper. In finding that a hospital room showup identification of an accused was valid and not violative of due process, the *Stovall* court explained:

"We turn now to the question whether petitioner, . . ., is entitled to relief on his claim that in any event the confrontation conducted in this case *was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.* This is a recognized ground of attack upon a conviction independent of any right to counsel claim. Palmer v. Peyton, 359 F.2d 199 (C.A.4th Cir.1966). The prac-

tice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup has been widely condemned. However, *a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, . . ."* Stovall v. Denno, *supra,* at 301–302, 87 S.Ct. at 1972. (Emphasis added).

*See* Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); Kirby v. Illinois, *supra.*

■ Although the United States Supreme Court has said that one-to-one confrontations between the accused and the witness for purposes of identifying the culprit in a criminal offense are inherently suspect and generally not condoned, it is also understood that "due process is not invariably violated by such a procedure." Terry v. Peyton, 433 F.2d 1016 (4th Cir. 1970); *See* Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (Douglas, J., dissenting).

Considering the foregoing principles, it is next our task to examine the "totality of circumstances" surrounding the police station identification in the case at bar, and resolve the question of whether appellants were denied due process as a result of any impermissible suggestiveness of the police station confrontation with witness Downs.

Respondent argues the credibility of the identification as reason for sustaining it. Respondent urges us to consider the fact that the identification took place approximately an hour after the witness observed the criminal event, the suggestion being that the witness's recollection of the appearance of the persons he observed would be fresher and more reliable the sooner after the observation the identification occurred. (*See* United States v. Miller, 145 U.S.App.D.C. 312, 449 F.2d 974 (1971); Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280 (1969). Respondent also places reliance on the contention that the witness's pre-showup description of appel-

lants closely coincided with their actual physical appearance, the slight discrepancies not being of a material nature. *See* State v. Daugherty, 94 Idaho 232, 486 P.2d 243 (1971).

■ These factors notwithstanding, judged by the standards set down by the United States Supreme Court in the *Wade, Kirby, Stovall* and *Biggers* cases, we are constrained to hold that the police station identification procedure was defective. "This Court does not condone highly suggestive police station identification procedures." State v. Raine, 93 Idaho 862, 477 P.2d 104 (1970), and for this reason we cannot sustain the police station identification procedure in this case. *See* Stovall v. Denno, *supra.* Both appellants were displayed individually to the witness, whereupon the witness was asked words to the effect of "Is this the man?" At the time of their identification, both were shackled by handcuffs and accompanied by police officers. It appears that Sadler, in addition, was being physically touched or restrained by a police officer who escorted Sadler into the room where Downs identified him. There is also evidence that Downs overheard, prior to his identification of appellants, that "a car and suspect car had been apprehended," and that Downs was advised by his wife that "she had not seen his (apparently Sadler's) face, but he was of the same build as the man that we watched go in." There is some indication that the confrontation between the witness Downs and the defendant Sadler was inadvertent. Officer Hupe testified that he was taking the defendant Sadler to a room for interrogation and when he opened the door the witness Downs was in the room and he backed out and took the defendant Sadler to another room. The officer said he could not remember asking Downs to step outside to observe the defendant Sever. However, the testimony of the witness Downs and the defendant Sadler clearly indicates that officer Hupe opened the door and presented the defendant Sadler to the witness Downs and asked him if this was the man. The witness identified Sadler as one of the men. The

testimony is further clear that the officer Hupe, then, or shortly thereafter, asked the witness Downs to step outside where he could observe the defendant Sever standing at the end of the hall handcuffed between two police officers. He then asked witness Downs if he thought that the defendant Sever was the driver of the car. The witness so identified the defendant Sever. These suggestive circumstances were too influencing, too inclined to prompt an erroneous identification for us to conclude that this manner of identification was proper. As stated in the excellent treatise by Judge Nathan R. Sobel, Eye-Witness Identification: Legal and Practical Problems (1972):

> "A showup, where the alternative of a lineup is available, is unnecessarily and impermissively suggestive, *Wade,* discussing showups, said (388 U.S. at 234 [, 87 S.Ct. 1926]) that it was difficult to imagine a situation more clearly conveying the suggestion that the person presented 'is believed guilty by the police.' The dissenting opinion in Biggers v. Tennessee, 390 U.S. 404, 407, [88 S. Ct. 979, 19 L.Ed.2d 1267] noted, 'The message is clear: the police suspect *this* man.' *Stovall* commented (388 U.S. at 302 [, 87 S.Ct. 1967]): 'The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned.' *See also*: Annot., Admissibility of Evidence of Showup Identification as Affected by Allegedly Suggestive Showup Procedures, 39 A.L.R.3d 791 (1971)." *Supra,* at 72.

Our finding that the police station identification was impermissively suggestive does not necessarily render defective the witness's in-court identification of appellants. The prosecution did not put on evidence of the police station identification, and therefore the *per se* exclusionary rule articulated in *Wade* and *Gilbert* is inapplicable. However, with regard to the in-court identification of the witness

Downs, such in-court identification is admissible even if the witness has participated in an impermissibly suggestive police station identification, if the prosecution can show, by clear and convincing evidence, that the "in-court identifications were based upon observations of the suspect other than the lineup identification." United States v. Wade, 388 U.S. 218, at 240, 87 S.Ct. 1926, at 1939, 18 L.Ed.2d 1149 (1967). Accord: Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); Gilbert v. California, *supra;* State v. Daugherty, *supra;* State v. Haggard, 94 Idaho 249, 486 P.2d 260 (1971). The controlling test in assessing the admissibility of an in-court identification following a defective pretrial identification was stated in *Wade* and apparently undisturbed by *Kirby*, to be:

> " ' "[W]hether, by granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." ' (citations omitted)." U. S. v. Wade, *supra,* 87 S.Ct. at 1939.

The court in *Wade* continued by delineating certain salient factors to be considered in applying the test in the posture of a police station pretrial confrontation:

> "Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description, and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." 87 S.Ct. at 1940.[3]

---

3. This court in State v. Daugherty, 94 Idaho 232, 486 P.2d 243, 246, utilized these factors verbatim as an aid in determining whether the pretrial police station

■ In order to determine the origin of witness Downs' in-court identification of appellants, we have examined the record at great length. In this regard, the record discloses sufficient and detailed evidence establishing that the witness's in-court identification was based on his original observations of appellants immediately subsequent to the commission of the criminal event and not upon his recall of the defective police station identification. Since the witness's in-court identification had an " 'independent origin exclusive of any connection with' events occurring in the police station," State v. Daugherty, *supra*, 486 P. 2d at 246, we conclude that the trial court properly admitted this identification into evidence. *See* Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

■ Crucial to our determination that the in-court identification was cleansed of the taint of the illegality of the police station identification are the factors that the witness descriptively demonstrated that he had an adequate, though brief, opportunity to observe, and in fact did observe appellants. The witness testified that although his principal purpose in driving in the alley toward the parked vehicle behind the Seven-Eleven Store was to get the license number of the vehicle, he also intended to and did record in his mind the appearance of the occupants of the vehicle. The witness's pretrial description of appellants does not vary in any material detail from their actual appearance. The only other of the above quoted factors which comes into play in this case also militates against appellants' position. The witness did not at any time identify any other persons as participants in the offense, and in fact never varied from his conclusion that the appellants were the persons whom he viewed the night of the offense. We do not find that any of the circumstances which rendered the police station identification impermissively suggestive preclude our finding that the in-court identification was properly admitted into evidence, and satisfied the due process requirements of *Stovall* and *Kirby*. Neither do we think it significant that the witness did not get a prolonged look at the occupants of the car as the witnesses did in State v. Daugherty, *supra,* and State v. Haggard, *supra.* The crucial aspect is not the length of the look, but the quality of it. The witness in the case at bar looked into the car, adequately lighted by its own dome lights and the bright headlight beam from the witness's pickup, for the express purpose of viewing the defendants.

In sum, the prosecution sustained its burden of showing by clear and convincing

confrontation constituted a critical stage at which the right to counsel was necessarily extant rather than for facilitating the determination of whether the in-court identification had an origin independent of a defective pretrial identification as the factors were deployed in *Wade.* With the advent of Kirby v. Illinois, *supra*, the right to counsel issue at any confrontation prior to the initiation of judicial criminal proceedings is no longer in dispute; *Kirby*, of course, decided that no right to counsel attached until the commencement of the formal judicial proceedings.

Under the due process test which is currently controlling in determining the legality of the police station identification prior to the start of judicial proceedings against an accused, we do not feel that the quoted material is entirely pertinent in aiding the determination. We acknowledge that some of the considerations quoted in *Wade* above will be relevant in assessing the police station identification procedure in a due process context. For example, it is important to consider the lapse of time between the observation of the criminal event and the identification. It is also important to examine the witness's opportunity to observe the suspects in the commission of the crime. These factors, of course, relate to the credibility and reliability of the witness's observation. More importantly, circumstances which contribute to an atmosphere of unnecessary suggestiveness at the confrontation itself must be considered.

In regard to the quoted material *in toto*, we feel it serves better in assisting a court in deciding whether a witness's in-court identification is sufficiently "purged of the primary taint" of an initially illegal pretrial confrontation to be properly admissible in evidence.

evidence that the in-court identification had as its source the actual observation of appellants on the night of the criminal offense. *See* United States v. Wade, *supra,* 388 U.S. at 240, 87 S.Ct. at 1939.

■ We could conclude our discussion of this issue at this point if it were not for the fact that the evidence of the suggestive police station identification was injected into the trial. In view of our conclusion that the police station identification was defective, we must determine whether the testimony concerning such identification constituted prejudicial error requiring reversal of appellants' convictions. We conclude that the admission of such evidence was not prejudicial to appellant, such admission being harmless error. Our finding of harmless error is predicated on two factors. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). First, the evidence of the police station identification is merely cumulative. We have previously concluded that the in-court identification had an independent source from the police station confrontation and was therefore properly admissible. Given this error-free positive identification, the second hand relation of the police station identification by a police officer witness at trial was not of sufficient consequence to have materially affected the overall probative effect of the evidence of guilt.

Secondly, the evidence of the police station confrontation by witness Downs was not offered by the prosecution, but was exposed at the trial by questions asked on cross examination of police officer Hupe by appellant Sever's counsel. Given the fact that the appellants, not the prosecution, opened up this subject of the defective police station identification, coupled with the fact that such evidence was merely cumulative in the light of Downs' positive in-court identification, any error was invited by the defense and was harmless.

■ One further issue raised by appellant Sadler merits comment. Appellant Sadler contends that the state withheld, in the form of a police investigation report,

information which could have aided him in the preparation of his defense. According to Sadler, that report contained information of discrepancies in witness Downs' description of appellants and their actual appearance which could have assisted Sadler's counsel in impeaching Downs. In addition, Sadler contends that the report reveals inconsistent statements made by State witnesses who testified about appellant's absence from the Iron Gate Bar where appellants, as their alibi, contended they were located at the time of the robbery. Although it is the duty of the prosecution to make available to the defense all evidence which tends to aid in ascertaining the truth, State v. Harwood, 94 Idaho 615, 495 P.2d 160 (1972), we can find no prejudicial error arising out of the failure of the prosecution to supply the defense with the police investigation report at the trial stage of the proceedings. We are controlled by the rule propounded by the United States Supreme Court in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963):

> "We now hold that the suppression by the prosecution of evidence favorable to an accused *upon request* violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (Emphasis added).

It is apparent that the prosecution's duty in this regard does not arise by the mere decision to prosecute, but only when requested by the defense to supply such evidence in the possession of the prosecution. *See* Williams v. Dutton, 400 F.2d 797 (5th Cir. 1968) cert. denied 393 U.S. 1105, 89 S.Ct. 908, 21 L.Ed.2d 799 (1969) (wherein it is stated, "It is now clear that *Brady* imposes an affirmative duty on the prosecution to produce at the appropriate time requested evidence which is materially favorable to the accused either as direct or impeaching evidence.") *Cf.* United States v. Eley, 335 F.Supp. 353 (N.D.Ga.1972). Since neither the record nor the contentions of appellants on appeal reveal any type of request

for the report at issue, we conclude that no due process violation was occasioned by the failure of the prosecution to volunteer this report to appellants.

Judgments of conviction affirmed.

DONALDSON, C. J., and McQUADE, J., concur.

SHEPARD, Justice (specially concurring in an opinion in which McFADDEN, J., concurs).

I concur with the majority's affirmance of the conviction. However, I emphatically disagree with that language condemning the police station identification and holding such procedure defective.

It should be pointed out initially that this case does not involve right to counsel. In my judgment the majority is overly entranced with the "landmark" cases of United States v. Wade, *supra,* and Gilbert v. California, *supra.* I suggest that neither *Wade* nor *Gilbert* are persuasive nor do they furnish any precedential value for the case at bar. The *Wade* court was badly split and seven opinions were filed. The individual justices concurred with and dissented from various parts of other opinions so that they did not reach a clear holding. Likewise *Gilbert* resulted in a badly split court with six individual opinions being filed. In my judgment *Wade* and *Gilbert,* if they stand for anything at all, apply only in situations where an accused was not furnished counsel at *post-indictment* lineups. Any loose language in *Wade* or *Gilbert* purporting to extend their holdings beyond such narrow confines has been repudiated in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.E.2d 411 and most recently in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L. Ed.2d 401 (1972).

Although the majority opinion alludes to Stovall v. Denno decided the same day as *Wade* and *Gilbert,* it unfortunately does not furnish the factual circumstances from which that case arose. In *Stovall* a doctor and his wife were stabbed. The doctor died and the wife was hospitalized for surgery. The defendant was arrested less than 24 hours later and brought to the hospital room for identification by the wife:

"Petitioner was handcuffed to one of five police officers who, with two members of the staff of the District Attorney, brought him to the hospital room. Petitioner was the only Negro in the room. Mrs. Behrendt identified him from her hospital bed after being asked by an officer whether he 'was the man' and after petitioner repeated at the direction of an officer a 'few words for voice identification.' None of the witnesses could recall the words that were used. Mrs. Behrendt and the officers testified at the trial to her identification of the petitioner in the hospital room, and she also made an in-court identification of petitioner in the courtroom.

"* * * He claimed that among other constitutional rights allegedly denied him at his trial, the admission of Mrs. Behrendt's identification testimony violated his rights under the Fifth, Sixth, and Fourteenth Amendments because he had been compelled to submit to the hospital room confrontation without the help of counsel and *under circumstances which unfairly focused the witness' attention on him as the man believed by the police to be the guilty person.*" 388 U.S. 293, at 295–296, 87 S.Ct. 1967, at 1969, 18 L.Ed.2d 1199.

The court stated:

"We turn now to the question whether petitioner, although not entitled to the application of *Wade* and *Gilbert* to his case, is entitled to relief on his claim that in any event *the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.* * * * (Emphasis supplied)

" 'Here was the only person in the world who could possibly exonerate Stovall. Her words, and only her words, "He is

not the man" could have resulted in freedom for Stovall. The hospital was not far distant from the courthouse and jail. No one knew how long Mrs. Behrendt might live. Faced with the responsibility of identifying the attacker, with the need for immediate action and with the knowledge that Mrs. Behrendt could not visit the jail, the police followed the only feasible procedure and took Stovall to the hospital room. Under these circumstances, the usual police station line-up, which Stovall now argues he should have had, was out of the question.' " 388 U.S. 293, at 301–302, 87 S. Ct. 1967, at 1972–1973, 18 L.Ed.2d 1199. Obviously the facts in *Stovall* are strikingly similar to the case at bar, with the exception of the hospitalization of the identifying witness.

The majority opinion alludes to Kirby v. Illinois but suggests that *Kirby* should be restricted solely to consideration of the failure to furnish counsel when a suspect is subjected to pre-indictment confrontations. The *Kirby* court refused to hold that the right to counsel extended to a pre-indictment confrontation. In *Kirby* two men robbed one Shard on the street. The following day Shard was brought to the police station for an identification.

"Immediately upon entering the room in the police station where the petitioner and Bean were seated at a table, Shard positively identified them as the men who had robbed him two days earlier. No lawyer was present in the room, and neither the petitioner nor Bean had asked for legal assistance, or been advised of any right to the presence of counsel." Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, at 1880, 32 L.Ed.2d 411.

The court in *Kirby* said:

"In the present case we are asked to extend the *Wade-Gilbert per se* exclusionary rule to identification testimony based upon a police station showup that took place *before* the defendant had been indicted or otherwise formally charged

with any criminal offense." 92 S.Ct. at 1879.

"A pretrial motion to suppress Shard's identification testimony was denied, and at the trial Shard testified as a witness for the prosecution. In his testimoney [sic] he described his identification of the two men at the police station on February 22, and identified them again in the courtroom as the men who had robbed him on February 20." 92 S.Ct. at 1880.

"In this case we are asked to import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings. * * * We decline to depart from that rationale today by imposing a *per se* exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever." 92 S.Ct. at 1882–1883.

The court continued:

"What has been said is not to suggest that there may not be occasions during the course of a criminal investigation when the police do abuse identification procedures. Such abuses are not beyond the reach of the Constitution. * * * When a person has not been formally charged with a criminal offense, *Stovall* strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime." 92 S.Ct. at 1883.

The United States Supreme Court in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), effectively repudiated the majority's philosophy herein. Five of the justices supported the majority view in *Biggers* while three concurred in a single dissent. The majority stated:

"Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for

the further reason that the increased chance of misidentification is gratuitous. *But as Stovall makes clear, the admission of evidence of a showup without more does not violate due process.* (Emphasis supplied)

"What is less clear from our cases is whether, as intimated by the District Court, unnecessary suggestiveness alone requires the exclusion of evidence. While we are inclined to agree with the courts below that the police did not exhaust all possibilities in seeking persons physically comparable to petitioner, we do not think that the evidence must therefore be excluded." 93 S.Ct. at 382.

I suggest that the holdings of *Wade* and *Gilbert* are suspect and in any event only apply to cases involving line-up procedures in the absence of counsel which take place a considerable period of time after the initial identification opportunity and in any event after the institution of formal proceedings against a defendant. *Stovall*, as reiterated in *Kirby* and *Biggers*, applies to a showup or head-to-head confrontation a short time following an initial identification opportunity where the interest of society is served by the "prompt and purposeful investigation of an unsolved crime." Further, as stated in *Biggers* "the admission of evidence of a showup without more does not violate due process." And "unnecessary suggestiveness alone [does not in and of itself] require the exclusion of evidence."

I also regret the majority's attempt to find solace in this court's opinion in State v. Raine, 93 Idaho 862, 477 P.2d 104. In *Raine* the defendant had attempted to pass a forged check at a store in Coeur d'Alene. The proprietor said he intended to call the bank and thereupon the defendant ran from the store. Later that day the proprietor went to the police station and identified the defendant in a head-to-head confrontation. "There was no official 'lineup' conducted by the police and no showing that a viewing was planned." At trial evidence of that police station identification was admitted. The defendant urged error in denial of his motion to suppress the proprietor's police station identification. This court stated:

"This Court does not condone highly suggestive police station identification procedures. However, assuming arguendo that such was the case (*which is by no means clear from the record*), according to the applicable case law, appellant's contentions are without merit." 93 Idaho 862, at 863, 477 P.2d 104, at 105.

I believe the majority's finding that the police station identification herein is defective is susceptible to the critical language of Mr. Justice White in *Wade*:

"The rule applies to any lineup, to any other techniques employed to produce an identification and *a fortiori* to a face-to-face encounter between the witness and the suspect alone, regardless of when the identification occurs, in time or place, and whether before or after indictment or information. It matters not how well the witness knows the suspect, whether the witness is the suspect's mother, brother, or long-time associate, and no matter how long or well the witness observed the perpetrator at the scene of the crime. The kidnap victim who has lived for days with his abductor is in the same category as the witness who has had only a fleeting glimpse of the criminal. Neither may identify the suspect without defendant's counsel being present. The same strictures apply regardless of the number of other witnesses who positively identify the defendant and regardless of the corroborative evidence showing that it was the defendant who had committed the crime.

"The premise for the Court's rule is not the general unreliability of eyewitness identifications nor the difficulties inherent in observation, recall and recognition. The Court assumes a narrower evil as the basis for its rule—improper police suggestion which contributes to erroneous identifications. The Court apparently believes that improper police

procedures are so widespread that a broad prophylactic rule must be laid down, requiring the presence of counsel at all pretrial identifications, in order to detect recurring instances of police misconduct. I do not share this pervasive distrust of all official investigations." 388 U.S. 218, at 251–252, 87 S.Ct. 1926, at 1944–1945, 18 L.Ed.2d 1149.

It appears to me that the inadvertent exposure of witness Downs to the suspects in this case within two hours of the time of the commission of the robbery constituted a perfectly natural reaction on the part of law enforcement personnel. Even if the exposure had been deliberate, rather than inadvertent, I would still hold that the identification procedure at the police station was not defective.

The majority opinion states:

"These suggestive circumstances were too influencing, too inclined to prompt an erroneous identification for us to conclude that this manner of identification was proper."

A disinterested person saw what he believed to be an armed robbery taking place. At some personal risk to himself he gained an opportunity to observe the robbers and noted the license number of their car. Based on his observations the police were enabled to promptly take the suspects into custody approximately two hours later. The witness went to the police station to make photographic identification. The suspects when arrested were naturally brought to the police station. Since the suspects had supposedly been involved in an armed robbery involving threats to kill, they were manacled and their weapons taken from them. I thoroughly disagree with the majority's statement that these were "suggestive circumstances" which were "too influencing, too inclined to prompt an erroneous identification."

I believe that such questions were for the jury, as were additional questions: did the witness have a sufficient opportunity to observe the defendants at the place of the crime; how long after the initial identification did the witness next have an opportunity to see the suspects; what was the condition of the witness' eyesight; what was the available lighting at the scene of the crime. I believe it is patent error for this court on the basis of a cold record without any opportunity to hear, see and observe the witnesses, including the defendants who took the stand, to denominate these circumstances suggestive, erroneous, and defective. The rule announced by the court today is overbroad. It suggests that any head-to-head identification without a formal lineup is defective, suggestive and too inclined to prompt an erroneous identification. The majority finds this so regardless of where or how soon any identification might take place following a crime. If, for example, in the case at bar the police arrived at the scene of the crime and apprehended the suspects two blocks from the store, the Witness Downs could not have identified them on the spot without a formal lineup. Thus, the police would have had no probable cause upon which to detain or arrest the suspects.

The rule announced today is based on the premise that all eyewitness identifications are unreliable and susceptible to improper police suggestions. While I am not so naive as to believe police misconduct does not exist, I do not share the majority's pervasive distrust of all law enforcement investigations.

The factual pattern of this case is not dissimilar from Stovall v. Denno, Kirby v. Illinois and Neil v. Biggers. The latest decisions of the United States Supreme Court do not require the language of the majority opinion, nor the announcement of this court's rule of "defective" identifications.