551 P.2d 605

The STATE of Idaho, Plaintiff-Respondent,

v.

Wayne CUNNINGHAM, Defendant-Appellant.

No. 11985.

Supreme Court of Idaho.

June 25, 1976.

**DONALDSON, Justice.**

Appellant was convicted by a jury of three offenses: rape and two counts of an infamous crime against nature.[1] The following facts were adduced at his trial.

On January 13, 1975, a young woman, Ms. X, was staying late for business classes in Spokane. At 8:45, classes ended and she walked to her car in a lot three blocks away. Just as she reached her car she noticed a man she later identified as the appellant and as she unlocked her car he pushed her in and threatened her with her life, saying that he had a knife. He told her he wanted to go Post Falls to see his wife and children and told her he would let her out at the state line. On the trip they had to stop once for gas at a well-lit station where the prosecutrix got a good look at her abductor. The defendant would not let Ms. X get out of the car when they reached the state line and forced her to go to Post Falls, Idaho. After reaching Post Falls they turned off into the country and eventually parked in an isolated area. The prosecutrix was then forced to perform a single act of sexual intercourse and four acts of fellatio in the next hour and a half. During the assault, Ms. X's abductor showed her a number of tattoos on his chest and arms, including one of a snake and also the word "Pam." Finally, the couple returned to Spokane and the appellant jumped out of the car at an intersection. Prosecutrix then returned to her apartment and three friends took her to the hospital. The incident was reported to the police and based upon Ms. X's description of her assailant, the defendant was arrested. Following his conviction on May 29, 1975, defendant appealed to this Court.

Richard P. Wallace, Coeur d'Alene, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Boise, R. Romer Brown, Sp. Asst. Atty. Gen., Coeur d'Alene, James F. Kile, Asst. Atty. Gen., Boise, for plaintiff-respondent.

■ Appellant first assigns as error the trial court's admission of five photographs into evidence which were used in a photographic lineup that included appellant. Appellant contends that the lineup was overly suggestive and thereby violated appellant's right of substantive due process.

1. See I.C. § 18–6101.

Approximately one week after the victim had been attacked she identified the appellant from a photographic lineup of five men of generally similar appearance. The record shows that the victim had gone to high school with three of the men pictured and recognized them during the lineup. Appellant contends that this, in effect, left a lineup consisting of only two men and that such a lineup is so unnecessarily suggestive as to make any identification totally unreliable. We do not agree.

The United States Supreme Court faced this issue in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). There the victim of an assault identified the defendant in a lineup that included only one black, the defendant. The victim, at that time, was in critical condition, making the hospital confrontation imperative. The Court stated that the test in such a case is whether the confrontation was so "suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno, supra,* at 1972. The Court went on to say that a determination of such a claim requires the Court to consider the "totality of the circumstances surrounding [the identification]." *Stovall v. Denno, supra,* at 1972. See also, *Cooper v. State,* 96 Idaho 542, 531 P.2d 1187 (1975); *State v. Sadler,* 95 Idaho 524, 511 P.2d 806 (1973); *State v. Daugherty,* 94 Idaho 232, 486 P.2d 243 (1971), where this Court applied the "totality of the circumstances" test and recognized its applicability to confrontations made prior to initiation of judicial proceedings. In *Stovall,* the Court held that due to the need for immediate action, the circumstances were such that the normal police lineup was out of the question and the hospital confrontation was justified. The Court subsequently applied this same test in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); and *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L. Ed.2d 401 (1972).

*Neil v. Biggers, supra,* was a rape case very similar to the present one. The victim had been in the presence of her assailant up to half an hour; had faced him directly and intimately once in the house, and later in the woods, in the moonlight; her description to the police including height, age, build, was thorough; she testified that she had "no doubt" that the accused was the person who raped her; she testified that there was something about her assailant's face she could never forget; and although there was a lapse of seven months between the rape and the showup identification, the victim had not identified any other suspect as her assailant. The showup consisted of two detectives walking the defendant alone past the victim and directing him to repeat a particular phrase. The police had been unable to construct a suitable lineup, as no one at the jail or the city juvenile home fit the physical description.

In the present case, the victim, Ms. X, was in appellant's presence approximately five and three-quarters hours; had faced him directly and intimately, including taking advantage of his invitation to look at his face in a well-lit gas station; her description to officers at the hospital, a few minutes after her return, included a distinctive snake tattoo and later on that same day her description to Officer Stewart included the snake tattoo and a tattoo of the name "Pam," a gouged lip, and a general description including age, height, body build, race; she testified that she had no doubt that the accused was the person who raped her. As in *Neil,* Ms. X testified, and reiterated upon cross-examination that she would never forget her assailant's eyes; there was only a week between the incident and the photo identification, and three weeks to the lineup; she had unhesitatingly picked the appellant, and no one else at any time, even though the photograph of the appellant was dissimiliar to his present appearance.

The Court in *Neil* reviewed its past decision concerning suggestive identifications and held that unnecessary suggestiveness alone does not require the exclusion of evidence regarding the identification. Rather, under the "totality of circumstances" if the identification is found to be "reliable even though the confrontation procedure was suggestive" there is no violation of defendant's right of due process in admitting the evidence. *Neil v. Biggers, supra,* at 382. Considering the length of time Ms. X spent with her assailant, her detailed description concerning his tattoos and gouged lip; her ability to direct the composition of a sketch remarkably similar in appearance to the appellant; and her subsequent live lineup and in-court identification of appellant; it is the opinion of this Court that there was no substantial likelihood of misidentification. The evidence was properly allowed to go to the jury. This being the case, there is no need to consider appellant's contention that the subsequent live lineup and in-court identifications by the victim were "tainted" by an impermissibly suggestive lineup.

We now turn to appellant's assignment of error to the admission into evidence of a "mugshot" of the appellant. Appellant claims that the mugshot was improper impeachment and that it unfairly prejudiced his case. This Court has not previously considered this issue and must therefore look to other jurisdictions for guidance.

In 1966, the Circuit Court of Appeals for the District of Columbia considered the question in *Barnes v. United States,* 124 U.S.App.D.C. 318, 365 F.2d 509 (1966). There, a mugshot had been admitted to buttress testimony naming the persons pictured as the perpetrators of the crimes. The mugshot had been taped over to cover all identification marks and numbers. The Court noted that it is settled law that the criminal record of the defendant may not be introduced unless the defendant places his character in issue. Noting that the mugshot had little probative value in and of itself, the court found its admission to be

improperly prejudicial and reversed the conviction.

In *United States v. Johnson,* 495 F.2d 378 (4th Cir. 1974), a taped-over mugshot was admitted incident to testimony by an identification witness. The mugshot showed the difference in the defendant's appearance between the date of identification and the time of trial. Finding probative value in the mugshot, the court found no error in its admission.

Our sister state of Washington allowed the admission of a trimmed mugshot which had been used by a witness to identify the defendant. The court was again swayed by the fact that the mugshot portrayed defendant's appearance at the time of the assault which differed from his appearance at the time of the trial. *State v. Tate,* 74 Wash.2d 261, 444 P.2d 150 (1968). See also, Mug Shots—Admissibility—Prejudice, 30 A.L.R.3d 908 (1970).

In the present case the mugshot was offered to prove an extra judicial identification of the appellant. In addition, the mugshot showed a change in the appellant's appearance from the time the photo had been taken to the time of the trial. The mugshot was trimmed by the trial judge to eliminate any reference to the local police department and while it is possible that the modified picture could lead the jurors to infer the existence of prior criminal convictions it is just as likely that the jury assumed they were taken by the police when the appellant was arrested on the charges for which he was presently being tried. The record also discloses that the trial judge instructed the jury, informing them that the photograph merely showed that appellant had been arrested and that it was not to be considered evidence that appellant had any prior criminal record. This Court therefore finds that no error was committed by the trial court in admitting the mugshot.

Appellant next assigns error to the court's refusal to allow defense counsel to interrogate the prosecutrix and the doctor

who examined her as to prior acts of sexual intercourse. This Court, in *State v. Pettit,* 33 Idaho 326, 193 P. 1015 (1920), stated that the general rule concerning such interrogation is that "particular acts of unchastity are not admissible to impeach the evidence of the prosecutrix." At 333, 193 P. at 1017. The Court went on to say:

"that where the state, as in this case, relies not merely upon the testimony of the prosecutrix touching the particular acts constituting the offense, but introduces expert medical testimony tending to show that an act of sexual intercourse had been committed, thereby enabling an inference of appellant's guilt to be drawn from this testimony in connection with other evidence in the case, it would be proper to permit the accused to introduce evidence tending to show that the alleged victim of his assault had actually had sexual intercourse with others, for the obvious reason that such evidence would completely negative any inference of guilt to be drawn from the medical expert testimony and bearing upon the accused * * *." At 333, 334, 193 P. at 1017.

Later, in *State v. Smailes,* 51 Idaho 321, 5 P.2d 540 (1931), the Court limited the above rule to an inquiry of sex acts that took place within the time limitation disclosed by the medical testimony:

"It is conceded that appellant may offer testimony tending to show specific acts of sexual intercourse by prosecutrix with other persons than the defendant, if within the time limitations disclosed by the medical testimony and the other facts in evidence, to negative the inference from the medical testimony that accused committed the act." At 330–31, 5 P.2d at 544.

■ Under cross-examination, the appellant attempted to elicit from the prosecutrix whether she was a virgin prior to the attack. Similarly, when he cross-examined Dr. Heinzen, his inquiry was an attempt to show that the prosecutrix was not a virgin, with no attempt to deal with specific acts of intercourse during the time period of the

attack. We find this line of questioning to be improper and the trial court was correct in finding such questioning inadmissible. The record shows that appellant was not basing his defense on consent and offered no evidence to support such a claim. Rather, Cunningham claimed he had not been with the prosecutrix and was defending on the issue of identification. It is the opinion of this Court that in a prosecution for forcible rape where, as in the present case, the evidence clearly establishes that sexual intercourse was accomplished with the prosecutrix by force or fear overcoming her resistance, and where neither the evidence offered by the state nor evidence offered on behalf of the appellant, tends to any substantial degree to raise the issue of consent, neither the evidence of the general reputation of the prosecutrix for unchastity, nor specific acts of sexual intercourse between prosecutrix and others besides appellant, are admissible. *State v. Settle,* 111 Ariz. 394, 531 P.2d 151 (1975); *State v. Sims,* 30 Utah 2d 357, 517 P.2d 1315 (1974); *Brown v. State,* 50 Ala.App. 471, 280 So.2d 177 (1973); *People v. Gabler,* 111 Ill.App.2d 121, 249 N.E.2d 340 (1969). The trial judge was correct in excluding the testimony concerning prosecutrix' chastity.

■ Appellant also contends that the question of prosecutrix' virginity was relevant as to the prosecutrix' reputation for truth, honesty and veracity. Ms. X has testified that while she was attempting to dissuade appellant from his clear intentions, she had told him "I am a virgin, please don't do this to me." Appellant claims he should have therefore been allowed to challenge such testimony in order to impeach her credibility. This argument is without merit. First, no foundation was laid for the purpose of impeaching her testimony, as no inconsistent statement by prosecutrix was proffered by appellant. Second, the statement was obviously made with the intent to stop the appellant from proceeding with his attack. Since, as earlier stated, contradiction of Ms. X's statement was not admissible for any other purpose, such

testimony was of an immaterial and collateral nature and is improper for impeachment. *Mundy v. Johnson,* 84 Idaho 438, 373 P.2d 755 (1962).

Appellant's final assignment of error is that the trial court erred in considering in the presentence report detailed police reports regarding charges against appellant which were not yet convictions. Rule 32(c) (2) of the Rules of Criminal Practice and Procedure states that:

> "The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court."

The presentence report revealed that contrary to appellant's testimony, he had lived in Florida and had used another name. Additionally, the report showed that appellant had violated probation in Pennsylvania and that a warrant was currently outstanding. The trial judge agreed that the charges pending against appellant in other jurisdictions were not a record of any prior convictions, but noted that they did indicate the appellant had committed perjury during the course of the trial. The court felt this must be taken into consideration in evaluating the case but restated that these charges would not be considered as convictions. We feel the information in the report was properly considered by the court as being relevant to the court's refusal to grant probation and its imposition of sentence.

In the context of the above argument, appellant contends that the trial judge abused his discretion in denying probation and imposing a thirty year sentence for the rape conviction and two five year terms for each conviction of infamous crimes against nature, all of which were to be served concurrently.

Section 18–6104, Idaho Code, sets the minimum punishment for conviction of rape as imprisonment in the state penitentiary for not less than one year, and the maximum as imprisonment for life, at the court's discretion. Section 18–6605, Idaho Code, provides for imprisonment in the state penitentiary for not less than five years for each count of a crime against nature. Excessiveness of punishment depends upon the circumstances of each case, and must be affirmatively shown by appellant. *State v. Thomas,* 94 Idaho 430, 489 P.2d 1310 (1971); *Lockard v. State,* 92 Idaho 813, 451 P.2d 1014 (1969); *State v. Ross,* 92 Idaho 709, 449 P.2d 369 (1968); *State v. Peterson,* 87 Idaho 147, 391 P.2d 846 (1964). We find the conduct of the appellant so heinous that the sentence imposed was well within the discretion of the trial court. *See State v. Mooneyham,* 96 Idaho 145, 525 P.2d 340 (1974); *State v. Trowbridge,* 95 Idaho 640, 516 P.2d 362 (1973). The reasoning of the trial court does not reveal an abuse of its discretion.

Judgment affirmed.

McFADDEN, C. J., SHEPARD and BAKES, JJ., and SCOGGIN, District Judge, retired, concur.