**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 45743**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | **Boise, August 2018 Term** |
| | ) | |
| v. | ) | **Filed: September 21, 2018** |
| | ) | |
| JEFFREY LYNN ALWIN, | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. Cynthia K.C. Meyer, District Judge.

District court order denying motion for new trial, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for appellant. Sally J. Cooley, Deputy Appellant Public Defender argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Mark W. Olson, Deputy Attorney General argued.

_____

BURDICK, Chief Justice.

Jeffrey Lynn Alwin appealed his judgment of conviction entered in the Kootenai County district court. A jury found Alwin guilty of felony eluding a peace officer. Alwin moved for a new trial, challenging the district court's admission of a booking photograph at trial. Alwin argued the booking photograph was evidence of prior criminal conduct in violation of Idaho Rule of Evidence ("I.R.E.") 404(b). The district court denied his motion. Alwin timely appealed and contended the district court abused its discretion in denying his motion for a new trial because the district court erroneously admitted I.R.E. 404(b) evidence over his objection when it admitted the booking photograph at trial. Alwin also argued the State committed prosecutorial misconduct during closing arguments. The Court of Appeals reversed, and the State filed a timely Petition for Review. For reasons discussed below, we affirm the district court's judgment.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On August 3, 2015, Officer Cody Cohen of the Coeur d'Alene Police Department was clearing a traffic stop when he observed a black Mercedes-Benz drive past that was rapidly

accelerating. Officer Cohen returned to his patrol vehicle and followed the Mercedes. Officer Cohen then initiated a traffic stop. The Mercedes pulled over and Officer Cohen approached the driver's window that was rolled about half-way down. Through this opening, Officer Cohen observed the sole occupant of the vehicle. He described the occupant as a white male with brown hair, about six feet in height with a muscular build. Officer Cohen also detected the odor of alcohol and that the male was avoiding eye contact. When Officer Cohen requested the male's driver's license, registration, and insurance information, the male responded with a slurred, incoherent response. At that time, the male reached across the vehicle to the glove box, returned his hand from the glove box empty, placed his hand on the shifter, and drove away. A multi-officer pursuit ensued but was ultimately disengaged.

Officer Cohen called and provided the license plate number to dispatch approximately fifteen minutes after the vehicle fled the initial traffic stop. It was then discovered the vehicle was registered to Jeffery Lynn Alwin. At that time, Officer Cohen pulled a photograph of Alwin from the computer system. Officer Cohen confirmed the photograph of Alwin matched the male he had stopped earlier. Based on this information, a warrant was issued for Alwin's arrest. Alwin voluntarily turned himself in.

The main issue at trial revolved around Officer Cohen's identification of Alwin. In support of Officer Cohen's testimony, the State offered as evidence the photo Officer Cohen viewed the night of the traffic stop. Alwin objected under I.R.E. 404(b). No further explanation accompanied the objection. The State responded, arguing the objection was improper because no conduct was being alleged by the photo. The district court agreed, overruled the objection, and the photo was admitted into evidence.

The jury found Alwin guilty of felony eluding a peace officer. Alwin moved for a new trial arguing that the district court "erred in deciding it was permissible to expose the jury to [Alwin]'s prior booking photo." The district court denied the motion. Alwin timely appealed and alleged the district court erroneously admitted I.R.E. 404(b) evidence and the district court's denial of Alwin's motion for a new trial was error. Alwin also alleged the State committed prosecutorial misconduct during closing arguments. The Court of Appeals reversed the district court's judgment, and the State timely filed a Petition for Review.

## II.    ISSUES ON APPEAL

2

1. Whether the district court's denial of Alwin's motion for a new trial was an abuse of discretion.

2. Whether the prosecutor committed misconduct during closing argument that amounted to fundamental error.

## III.   STANDARD OF REVIEW

This Court reviews a district court's denial of a motion for a new trial under an abuse of discretion standard. *State v. Lankford*, 162 Idaho 477, 491, 399 P.3d 804, 818 (2017) (quoting *State v. Stevens*, 146 Idaho 139, 144, 191 P.3d 217, 222 (2008)). Similarly, a district court's determination that evidence is admissible under I.R.E. 404(b) is reviewed for an abuse of discretion. *State v. Rawlings*, 159 Idaho 498, 504, 363 P.3d 339, 345 (2015) (citing *State v. Pepcorn*, 152 Idaho 678, 690–91, 273 P.3d 1271, 1283–84 (2012)). "To determine whether a trial court has abused its discretion, this Court considers whether it correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason." *Id.* (quoting *Reed v. Reed*, 137 Idaho 53, 57, 44 P.3d 1108, 1112 (2002)).

"Where prosecutorial misconduct was not objected to at trial, [this Court] may only order a reversal when the defendant demonstrates that the violation in question qualifies as fundamental error[.]" *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010). Showing fundamental error requires the following:

> (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

*Id.* at 226, 245 P.3d at 978 (citation omitted). The burden of showing fundamental error is placed on the defendant. *Id.* If the burden is satisfied, this Court must vacate and remand. *Id.* at 227, 245 P.3d at 979.

## IV.   ANALYSIS

**A.   The district court did not abuse its discretion in denying Alwin's motion for a new trial.**

At trial, a prior booking photo of Alwin was offered into evidence by the State. According to Alwin, the booking photo displays Alwin standing, unsmilingly, in front of a blank

wall, dressed in yellow "jail garb," and it is apparent Alwin has a black eye. The introduction of the photo was accompanied by Officer Cohen's testimony that he had viewed the photo from a computer system in his patrol vehicle. When asked by the district court whether the defense had any objections to the introduction of the booking photo, Alwin's counsel simply stated: "[w]e would object under 404(b)." The State responded: "[n]o, I don't think it is 404(b) . . . [t]here is no conduct being alleged." The district court agreed with the State and admitted the booking photo. Alwin moved for a new trial, pursuant to Idaho Criminal Rule 34, alleging the district court erred in admitting the photo into evidence. The district court denied the motion, stating "if the request had been made to redact the clothing from the photo, since there would be no harm in doing that, I probably would have ordered it. . . . But I don't think it's required, and so I am going to deny the motion." On appeal, Alwin argues the motion for a new trial should have been granted because the district court "committed an error of law in not realizing that the booking photo was evidence of a prior bad act and, thus, failing to recognize that analysis under I.R.E. 404(b) was required." For the reasons to be discussed, the district court did not erroneously admit the booking photo because the photo did not constitute I.R.E. 404(b) evidence. Because the photo did not constitute I.R.E. 404(b) evidence, the district court's denial of Alwin's motion for a new trial was not erroneous.

The Idaho Rules of Evidence applicable at the time of Alwin's trial[1] provided that, "[a]ll relevant evidence is admissible except as otherwise provided by these rules or by other rules applicable in the courts of this state. Evidence which is not relevant is not admissible." I.R.E. 402. Evidence is relevant if the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than [the fact] would be without the evidence." I.R.E. 401. However, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." I.R.E. 404(b). But such evidence may be admissible for other permitted purposes such as proving "motive, opportunity, intent, preparation, plan, knowledge, *identity*, or absence of mistake or accident[.]" *Id*. (emphasis added). If propensity evidence is offered for one of the above listed purposes, "the prosecution in a criminal case shall file and

---

[1] The Idaho Rules of Evidence were amended in March of 2018 and the amendments became effective July 1, 2018. While the language differs slightly from the Rules in place at the time of Alwin's trial, the content is substantially the same.

4

serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." *Id.*

Mugshots are generally inadmissible under I.R.E. 404(b) because mugshots are indicative of a prior crime, wrong, or other bad act. *See State v. Cunningham*, 97 Idaho 650, 653, 551 P.2d 605, 608 (1976). Mugshots are indicative of a prior crime, wrong, or other bad act because mugshots contain indicia typically associated with criminal activity. *See id.*; *Barnes v. United States*, 365 F.2d 509, 510–11 (D.C. Cir. 1966), (noting "[t]he double-shot picture, with front and profile shots alongside each other, is so familiar . . . that the inference that the person involved has a criminal record, or has at least been in trouble with the police, is natural, perhaps automatic."); *see also Eberhardt v. Bordenkircher*, 605 F.2d 275, 280 (6th Cir. 1979) ("The use of mugshots has been strongly condemned . . . as effectively eliminating the presumption of innocence and replacing it with an unmistakable badge of criminality."). Thus, mugshots that display the typical indicia associated with criminal activity—height lines, front and side profiles, and references to police departments—are inadmissible under I.R.E. 404(b). *See Cunningham,* 97 Idaho at 653, 551 P.2d at 608*; see also United States v. McCoy*, 848 F.2d 743, 745–46 (6th Cir. 1988) (holding the district court erred in admitting mugshots that displayed defendant, among others, standing in front of height lines holding a sign that referenced the local police department).

However, mugshots that have been trimmed to eliminate the indicia described above are not indicative of criminal activity and thus, are not considered I.R.E. 404(b) evidence. *See Cunningham*, 97 Idaho at 653, 551 P.2d at 608. This Court has stated: "[p]hotographs showing the . . . appearance of a person are generally admissible in the discretion of the trial court, unless the photograph is so inflammatory that its probative value is outweighed by the prejudice which might result from its inflammatory nature." *State v. Carter*, 103 Idaho 917, 921, 655 P.2d 434, 438 (1981). Such photos used to "describe a person . . . are admissible for the purpose of explaining and applying the evidence and assisting the jury in understanding the case." *Id.* (quoting *State v. Kleier*, 69 Idaho 278, 286, 206 P.2d 513, 518 (1949)). Photographic "evidence is used to clarify and present a more comprehensive explanation of the physical facts than could be obtained from the testimony of the witnesses." *Id.* Thus, mugshots that have been trimmed to eliminate reference to prior criminal behavior, and therefore do not constitute I.R.E. 404(b)

5

evidence, will be admitted so long as the mugshot is relevant and the mugshot's probative value outweighs prejudice to the defendant. *See* I.R.E. 401; I.R.E. 403.

This Court has held that a district court does not err in admitting a mugshot if the typical indicia are removed or trimmed. *Cunningham*, 97 Idaho at 653, 551 P.2d at 608. In *Cunningham*, the State offered into evidence a mugshot to prove, among other things, an extrajudicial identification of the defendant. *Id*. The mugshot had been trimmed to "eliminate any reference to the local police department[.]" *Id*. This Court affirmed the district court's admission of the mugshot because the mugshot had probative value. *See id*. (citing *United States v. Johnson*, 495 F.2d 378 (4th Cir. 1974)) (holding the district court did not err in admitting a taped-over mugshot that was offered to show the defendant's appearance because the mugshot had probative value).

A few years later, this Court once again affirmed the district court's admission of a mugshot where the "numbers and language at the bottom of the photograph, indicating it was a 'mug shot,' were removed prior to the photo's admission into evidence." *Carter*, 103 Idaho at 921, 655 P.2d at 438. In *Carter*, the mugshot was offered by the State to show the appearance of the defendant at the time of the incident. *Id*. This Court held the mugshot was admissible because it would serve as an aid in "explaining and applying the evidence and assisting the jury in understanding the case." *Id*. at 922, 655 P.2d at 439. This Court reasoned the mugshot was more probative than prejudicial because the mugshot would assist the jury in having an "accurate contemporary view of the circumstances of the crime." *Id*. at 922, 655 P.2d at 439.

Other state and federal jurisdictions have similarly held photos that lack the typical indicia of a mugshot may be admissible. For instance, in Washington, its Supreme Court held a mugshot that had all identifying information removed was properly admitted because the mugshot did "nothing to suggest it was a police photograph." *State v. Scott*, 604 P.2d 943, 946 (Wash. 1980). Similarly, the Supreme Court of Arizona held a mugshot that "excluded any reference to the [defendant's] robbery or the circumstances surrounding the taking of the photograph" was admissible because the photo was relevant to prove identity and the admission was not unfairly prejudicial. *State v. McCutcheon*, 781 P.2d 31, 35 (Ariz. 1989). Additionally, the Sixth Circuit more recently held a photocopy of a photographic array was admissible because the array did not display jail identification numbers or height lines. *United States v. George*, 160 Fed. Appx. 450, 456 (6th Cir. 2005) (recognizing the array was admissible despite the "use of

mug shots [being] highly disfavored" because the photo removed "any of the typical indicia of a mug shot" i.e. height lines or jail identification numbers).

In this case, Alwin argues the district court erred in admitting the booking photo because the photo constituted I.R.E. 404(b) evidence and because the State failed to provide notice of its intent to use the booking photo. According to Alwin, the booking photo constitutes I.R.E. 404(b) evidence because it "demonstrated that Mr. Alwin had been incarcerated or at least arrested in the past." The booking photo portrays Alwin, standing somberly in front of a blank wall, with a black eye and wearing a yellow scrub shirt. Alwin argues that from the photo it is clear he is wearing "jail clothing." In addition, Alwin argues the booking photo was accompanied by Officer Cohen's testimony stating he was able to view the photo from a computer system in his patrol vehicle. According to Alwin, the photo, along with the accompanying testimony, was evidence of a prior crime, wrong, or other act, and thus, was inadmissible under I.R.E. 404(b). This argument is unavailing.

Alwin's argument is that there should be an absolute bar for use of a booking photo under any circumstance. However, here, the booking photo lacks the typical indicia of a booking photo or mugshot. Unlike the photo in *Barnes* that consisted of "two close-up shots of [the defendant's] face side by side, one full face and one a profile," the booking photo here was not offered contemporaneously with a side profile view that would lead jurors to believe the photo was a mugshot. 365 F.2d at 510. Instead, similar to the photo in *Cunningham* that was admissible because it had been trimmed to eliminate any reference to the local police department, the booking photo here also lacked any reference to the local police department. 97 Idaho at 653, 551 P.2d at 608. In addition, similar to the photo in *George* that was admissible because it lacked height lines and jail identification numbers, the booking photo here also lacked height lines and jail identification numbers. 160 Fed.Appx. at 456. Thus, the booking photo in this case does not constitute I.R.E. 404(b) evidence because it lacks the typical indicia of a mugshot; the front-facing photo of Alwin was not accompanied by a side profile photo and the photo lacked height lines, any reference to the local police department, or jail identification numbers.

Instead, the booking photo is a headshot of Alwin standing in front of a blank wall. As the district court recognized, the photo could have been a passport photo or a driver's license photo. The State offered the booking photo for identification purposes. That is, the photo was offered with Officer Cohen's testimony that he had viewed the photo on his computer after

stopping Alwin and the photo on record matched the description of the male he had stopped. Like the photo in *Carter* that was introduced, among other reasons, to assist the jury in understanding the case, the booking photo here was introduced to assist the jury in understanding how Officer Cohen confirmed the identity of the individual who drove away from a traffic stop and also the owner of the automobile for further investigation. 103 Idaho at 921, 655 P.2d at 438. Such photos are admissible because they are relevant and probative. *See id*. Therefore, the district court did not err in ruling the photo was not I.R.E. 404(b) evidence and ultimately admitting the booking photo into evidence.

Alwin next argues the district court erred in denying his motion for a new trial because the district court erroneously admitted the booking photo. At the time the post-trial motion was made, Rule 34 provided "[t]he court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice."[2] Rule 34 "does not provide an independent ground for a new trial." *State v. Lankford*, 162 Idaho 477, 493, 399 P.3d 804, 820 (2017) (quoting *State v. Cantu*, 129 Idaho 673, 675, 931 P.2d 1191, 1193 (1997)). Instead, Idaho Code section 19-2406 sets forth the limited grounds for which a district court may grant a motion for a new trial. Such motions may be granted "[w]hen the court has misdirected the jury in a matter of law, or has erred in the decision of any question of law arising during the course of the trial" or "[w]hen the verdict is contrary to law or evidence." I.C. § 19-2406(5)–(6). As discussed above, the district court did not err in admitting the booking photo because the photo does not constitute I.R.E. 404(b) evidence. Thus, the district court did not, as Alwin alleges, err by misdirecting the jury and the verdict was not contrary to the law or evidence. Thus, the district court properly denied Alwin's motion for a new trial.

**B.      The prosecutor committed prosecutorial misconduct but it did not rise to the level of fundamental error.**

Alwin asserts three instances of prosecutorial misconduct that occurred during the prosecutor's closing argument. First, Alwin asserts the prosecutor committed misconduct by bolstering Officer Cohen's testimony. Second, Alwin asserts the prosecutor committed misconduct by personally guaranteeing to the jury the defense's theory of the case was untrue. Lastly, Alwin asserts the prosecutor committed misconduct by implicitly asking the jury to find Alwin guilty based on information other than evidence adduced at trial. Alwin concedes the

---

[2] I.C.R. 34 was amended since the district court's decision. The new language reads: "[o]n the defendant's motion, the court may vacate any judgment and grant a new trial on any ground permitted by statute." I.C.R. 34(a).

instances of misconduct were not objected to in the district court. Each allegation will, in turn, be discussed below.

"Where prosecutorial misconduct was not objected to during trial, this Court may only reverse when the misconduct constitutes fundamental error." *Lankford*, 162 Idaho at 494, 399 P.3d at 821 (quoting *State v. Adamcik*, 152 Idaho 445, 480, 272 P.3d 417, 452 (2012)). Fundamental error: "(1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate records, including information as to whether the failure to object was a tactical decision); and (3) [is] not harmless." *Id*. (quoting *Perry*, 150 Idaho at 228, 245 P.3d at 980). An error is harmless only if it can be proven beyond a reasonable doubt the error did not contribute to the jury's verdict. *Id*. "If the defendant persuades [this Court] that the complained of error satisfies this three-prong inquiry, then [this Court] shall vacate and remand." *Perry*, 150 Idaho at 228, 245 P.3d at 980.

"There is . . . 'considerable latitude in closing argument,' and both sides are 'entitled to discuss fully, from their respective standpoints, the evidence and the inferences' that should be drawn from it." *State v. Dunlap*, 155 Idaho 345, 369, 313 P.3d 1, 25 (2013) (quoting *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003)). "Whether comments during closing arguments rise to the level of fundamental error is a question that must be analyzed in the context of the trial as a whole." *Lankford*, 162 Idaho at 497, 399 P.3d at 824 (quoting *State v. Carson*, 151 Idaho 713, 718–19, 264 P.3d 54, 59–60 (2011)). Unobjected-to prosecutorial misconduct that arises in closing argument must be so egregious that the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Additionally, misconduct may be remedied by an instruction from the district court informing the jury that the attorneys' comments are not evidence. *Id*. at 501–02, 399 P.3d at 828–29 (stating "the court explicitly informed the jury that comments during closing statements were not to be considered as evidence. . . . Given the context of the prosecutor's comments, we do not think they were so egregious or inflammatory that they would not have been cured by the court's instruction.").

The initial question in analyzing a prosecutorial misconduct claim is determining whether the prosecutor's comments constituted misconduct. *Id*. at 494, 399 P.3d at 821. "It is the duty of the prosecutor to see that a defendant has a fair trial, and that nothing but competent evidence is

submitted to the jury." *State v. Christiansen*, 144 Idaho 463, 469, 163 P.3d 1175, 1181 (2007) (quoting *State v. Irwin*, 9 Idaho 35, 44, 71 P. 608, 611 (1903)). Prosecutors, therefore, should not "exert their skill and ingenuity to see how far they can trespass upon the verge of error, [because] generally in so doing they transgress upon the rights of the accused." *Id.* Prosecutorial misconduct occurs "[w]here [the] prosecutor attempts to secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted during trial, including reasonable inferences that may be drawn from that evidence[.]" *Lankford*, 162 Idaho at 494, 399 P.3d at 821. However, in reviewing allegations of prosecutorial misconduct, this Court "must keep in mind the realities of trial." *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). "A fair trial is not necessarily a perfect trial." *Id.* (quoting *State v. Estes*, 111 Idaho 423, 427–28, 725 P.2d 128, 132–33 (1986)).

      1.    <u>The prosecutor did not commit misconduct by commenting on the credibility of the State's witness.</u>

Alwin argues the prosecutor committed misconduct by vouching for the State's witness, Officer Cohen, in closing argument. The statement at issue was: "[t]here's one person in here who has the motive to not tell the truth, and he's sitting right there. Not Officer Cohen, a police officer. He is not going to sit up here under oath and not tell the truth. He is credible. His testimony is credible. . . ." Alwin also argues the statement, "Officer Cohen wasn't making anything up" was impermissible vouching. According to Alwin, these statements made by the prosecutor during closing argument "improperly placed the imprimatur of the State on Officer Cohen's testimony[,]" and "improperly bolstered the testimony of the law enforcement witness and usurped the jury's vital and exclusive role to make all credibility determinations[.]"

"Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness' veracity, or suggesting that information not presented to the jury supports the witness's testimony." *Lankford*, 162 Idaho at 497, 399 P.3d at 824 (quoting *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993)). Vouching occurs if there is no evidence to support an assertion made by the prosecutor. *See id.* at 498, 399 P.3d at 825 ("[T]he statement about [witness] being inconvenienced and telling the truth is vouching. There is no evidence to support the assertion by the prosecutor that [witness] 'was inconvenienced[.]' "). However, "vouching statements, although constituting prosecutorial misconduct, do not constitute a clear constitutional violation." *Id.* (citing *Dunlap*, 155 Idaho at 370, 313 P.3d at 26).

Thus, even where a prosecutor impermissibly vouches for a witness, the improper statements will not rise to the level of fundamental error. *Id*.

In contrast, prosecutors are "entitled to explain how, from their own perspectives, 'the evidence confirms or calls into doubt the credibility of particular witnesses.' " *Dunlap*, 155 Idaho at 369, 313 P.3d at 25 (quoting *Sheahan*, 139 Idaho at 280, 77 P.3d at 969). A prosecutor is permitted to "argue reasonable inferences based on the evidence, including that one of the two sides is lying." *Lankford*, 162 Idaho at 497, 399 P.3d at 824 (citation omitted). Additionally, it is wholly permissible for a prosecutor to respond to a defendant's "attempts to impeach the credibility of government witnesses." *Id*. at 497–98, 399 P.3d at 824–25 ("The remaining statements about the truthfulness of the State's witnesses . . . are not vouching because defense counsel opened the door to the discussion of the State's witnesses' veracity.").

In this case, the prosecutor's statements did not constitute vouching because Alwin's counsel called into question the credibility of the State's witness, Officer Cohen, on cross-examination. During cross-examination, Alwin's counsel questioned inconsistencies in Officer Cohen's report. Alwin's counsel asked, "[y]ou wrote it in your report, correct, that it was a high risk situation," to which Officer Cohen responded: "I don't recall using the term 'high risk.' " A short time later, Alwin's counsel also questioned Officer Cohen regarding the accuracy of his written report that was completed fifteen minutes after the incident. Alwin's counsel stated: "[s]o in this particular case, after you had looked at the photograph of the registered owner, Mr. Alwin, from Officer Phillips' vehicle, you say roughly 15 minutes later, you didn't include that it occurred 15 minutes later in the report; is that right?" When Officer Cohen responded "[n]o," Alwin's counsel then asked: "[a]nd, in fact, you didn't actually say that the driver was Mr. Alwin. You wrote that you believed it to be Mr. Alwin; is that right?" After some banter between Officer Cohen and Alwin's counsel, Officer Cohen asked to review his report and then agreed that he indeed wrote "I believe it was Mr. Alwin driving the vehicle."

The exchange between Officer Cohen and Alwin's counsel on cross-examination illustrates that Alwin attacked the credibility of Officer Cohen. This exchange allowed the prosecutor to comment on the State's witness's credibility. *See Lankford*, 162 Idaho at 497, 399 P.3d at 824. Therefore, the prosecutor's statements assuring the jury that Officer Cohen was, in fact, credible are not instances of vouching and do not constitute misconduct.

11

Further, the whole statement by the prosecutor connected the credibility statement to evidence in the record. The full statement made by the prosecutor was:

> There's one person in here who has the motive to not tell the truth, and he's sitting right there. Not Officer Cohen, a police officer. He is not going to sit up here under oath and not tell the truth. He is credible. His testimony is credible, *and it was consistent and he documented everything that night that turned out to be true later on once he was arrested.*

The emphasized language establishes that the prosecutor was not making assertions unsupported by the record. *See Lankford*, 162 Idaho at 498, 399 P.3d at 825. Indeed, the record provides documentation of Officer Cohen's report that is consistent with Officer Cohen's testimony. Because the prosecutor did not make unsupported assertions of Officer Cohen's credibility, the prosecutor's statements did not constitute vouching. Thus, the prosecutor did not commit prosecutorial misconduct.

2. The prosecutor did not commit misconduct by guaranteeing to the jury that the State's witness's identification of Alwin was correct.

Alwin next argues the prosecutor committed misconduct by personally guaranteeing the jury that Alwin's theory of the case was untrue. The first statement Alwin alleges is error is as follows:

> And you can watch Cohen in that video, you know, what I got a view of is everything from the waist up, absolutely everything from the waist up. So he's in there and he's looking. And he's a unique-looking guy. I guarantee if I walked him in here at the beginning of this case, had him stand here and look at you and then look away for 20 seconds, starting now, when you saw a picture of him 15 minutes later and said, that's the guy, you're all going to pick him out, because it's him.

According to Alwin, the statement violated his right to a fair trial because the prosecutor used the weight of his office to undermine Alwin's theory of the case and disable the jury from making all credibility determinations. This argument is unpersuasive.

Prosecutors, in closing arguments, are permitted to explain from their own perspectives how the evidence confirms or calls into doubt the credibility of a particular witness. *Dunlap*, 155 Idaho at 369, 313 P.3d at 25. The prosecutor's comments simply cast doubt on the testimony provided by the expert regarding the accuracy of identification. Alwin's expert specifically testified about the amount of time needed to make an accurate representation. The expert testified: "We know from a variety of studies what the accuracy rate is under pretty much ideal circumstances if somebody only gets, let's say, 10 or 12 seconds of view, and we know that the

12

accuracy rate is in comparison if somebody gets 30 or 40 seconds of view." The expert also testified: "If you only get a really brief glimpse of someone, the likelihood of you being able to ID them later on goes down, and if you get a much longer view of someone, the likelihood of being able to ID them goes up." The prosecutor's statements guaranteeing the jury they would be able to identify Alwin after only twenty seconds were directly related to the expert's testimony regarding the accuracy of identification. Therefore, such statements do not constitute misconduct.

Alwin also attacks the statement:

And I guarantee you one thing: [i]t's not two Russian guys, one of two Russian guys who looks slightly like him. It didn't happen that way. It did not happen that way. It happened just as [Officer] Cohen said it happened, and there's a lot of evidence to support that, because it happened.

Alwin argues his right to a fair trial was violated by the statement because the jury was unable to determine Officer Cohen's credibility on its own. This argument is also unpersuasive.

The prosecutor's comment regarding the "Russian guys" was also casting doubt on Alwin's testimony that it was possible someone else was driving his car the night of the traffic stop. On direct-examination, Alwin testified that two individuals had access to his car. However, the men were never discussed again and no evidence was introduced to support Alwin's theory. Conversely, Officer Cohen did testify about identifying Alwin and there was evidence provided in Officer Cohen's report which supported his identification of Alwin. Thus, the comment about not believing Alwin's theory of the case was merely asking the jury to determine who was more credible, Alwin or Officer Cohen. Such statements are not misconduct.

3. <u>The prosecutor's comments regarding the expert's testimony and providing his own personal opinion constitute prosecutorial misconduct but do not rise to the level of fundamental error.</u>

Alwin argues the prosecutor committed misconduct by asking the jury to decide the case based on facts not supported by the record. The prosecutor stated: "[a]nd I completely disagree with the expert. I know that, you know, he's got some fancy titles and stuff, that when you're under stress, you focus less. I completely disagree. I think that a lot of people get hyperfocused when they stress." According to Alwin, the prosecutor's comments were "asking the jury to trust his opinion, as a prosecutor instead of an expert (and so conflicting with the trial evidence) to make a finding contrary to the only evidence in the record." The State responds that the

13

prosecutor's comments were simply asking the jury to use their common sense to evaluate the expert's testimony.

"This Court has long instructed that, if the State expresses an opinion as to the credibility of a witness, it must be based on the evidence and should not be couched in terms of a personal opinion." *State v. Montgomery*, 163 Idaho 40, ___, 408 P.3d 38, 44 (2017) (citing *State v. Garcia*, 100 Idaho 108, 110 n. 1, 594 P.2d 146, 148 n. 1 (1979)). Such personal opinions constitute misconduct because a prosecutor cannot "secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted during trial, including reasonable inferences that may be drawn from that evidence . . . ." *Lankford*, 162 Idaho at 494, 399 P.3d at 821.

This Court has held it is improper for a "prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence[.]" *Garcia*, 100 Idaho at 110, 594 P.2d at 148. Such personal statements constitute misconduct because they are a "form of unsworn, unchecked testimony" that can "exploit the influence of the [government]." *Id*. at 111, 594 P.2d at 149. In *Garcia*, the prosecutor stated: "I don't believe [defendant]'s story, too many coincidences, too many slips and slides around the facts." *Id*. at 110, 594 P.2d at 148. This Court held the statement constituted prosecutorial misconduct because a prosecutor should not express his personal opinion or belief as to the truth or falsity of a defendant's testimony. *Id*. at 111, 594 P.2d at 149.

A prosecutor, however, does not express a personal opinion or belief as to the truth or falsity of a defendant's testimony if the statement is based on evidence that has been submitted to a jury. *Montgomery*, 163 Idaho at ___, 408 P.3d at 45. In *Montgomery*, the jury was shown a video of the alleged incident and heard evidence of the defendant's actions the night of the incident. *Id*. In closing argument the prosecutor stated: "Ladies and gentlemen, you heard [defendant] lie to you." *Id*. at ___, 408 P.3d at 44. This Court held the prosecutor's comments alleging the defendant lied were not based on personal beliefs because a video was shown to the jury regarding the defendant lying. *Id*. at ___, 408 P.3d at 45. Thus, the comments were not misconduct because they were not "couched in terms of the [prosecutor's] personal beliefs. *Id*.

In this case, the prosecutor stated that he "completely disagree[ed]" with the expert. The prosecutor did not attack the credibility of the expert. Instead, the prosecutor expressed a personal opinion that he disagreed with the expert's testimony. The prosecutor's comment was

also based on facts the jury did not hear. The prosecutor commented: "I think that a lot of people get hyperfocused when they stress." However, the State did not provide an expert to rebut Alwin's expert's opinion, nor was evidence provided that discussed individuals becoming "hyperfocused" when stressed. Thus, the prosecutor's comments expressed a personal belief or opinion as to the truth or falsity of testimony or evidence, and thus, constituted misconduct. *See Garcia*, 100 Idaho at 110, 594 P.2d at 148.

Because we conclude the prosecutor's comments regarding his disagreement with the expert's testimony constituted misconduct, we must determine whether the misconduct rose to the level of fundamental error. *Perry*, 150 Idaho at 226, 245 P.3d at 978. "Prosecutorial misconduct during closing arguments will constitute fundamental error only if the comments were so egregious or inflammatory that any consequent prejudice could not have been remedied by a ruling from the trial court informing the jury that the comments should be disregarded." *Lankford*, 162 Idaho at 501, 399 P.3d at 828 (quoting *Parker*, 157 Idaho at 146, 334 P.3d at 820).

As mentioned above, in *Lankford*, the appellant alleged the prosecutor committed misconduct by repeatedly stating the defendant had lied or was a liar. *Id.* at 499, 399 P.3d at 826 (listing sixteen instances where the prosecutor stated the defendant lied or was a liar). This Court disagreed, and held the prosecutor's comments did not constitute misconduct. *Id.* at 501, 399 P.3d at 828. However, this Court went on to recognize that even if the statements rose to the level of prosecutorial misconduct, the misconduct would not rise to the level of fundamental error. *Id.* In its reasoning, this Court recognized the district court "explicitly informed the jury that the comments during closing [arguments] were not to be considered as evidence." *Id.* Further, an instruction was provided to the jury that stated: "The arguments and statements of the attorneys are not evidence. If you remember the facts differently from the way the attorneys have stated them, you should base your decision on what you remember." *Id.* Because the instruction was provided, this Court concluded that even if the comments constituted misconduct, the misconduct would not rise to the level of fundamental error because the comments were not so egregious or inflammatory that the instruction would not have remedied any consequential prejudice. *Id.*

In this case, the misconduct does not amount to fundamental error because a jury instruction was provided that remedied any prejudice. That instruction provided:

> The evidence you are to consider consists of, one, sworn testimony of witnesses; two, exhibits which have been admitted into evidence; and three, any facts to which the parties have stipulated. Certain things you have heard or seen are not evidence, including, one, arguments and statements by lawyers. The lawyers are not witnesses. What they say in their . . . closing arguments and at other times is included to help you interpret the evidence, but it is not the evidence. If the facts as you remember them differ from the way the lawyers have stated them, follow your memory.

The instruction here is very similar to the instruction in *Lankford* that informed the jury what the lawyers said in closing arguments was not evidence and should not be considered as evidence. *Lankford*, 162 Idaho at 501, 399 P.3d at 828. Further, the comments in this case are not so egregious or inflammatory that they become incurable by such an instruction. *Id*. In fact, the comment complained of is brief, and occurred on a single, isolated occasion. This Court in *Lankford* concluded that reoccurring statements attacking the defendant's honesty were not so egregious and inflammatory that the jury instruction would not remedy any consequential prejudice. *Id*. Here, the brief, isolated comment is similarly not egregious or so inflammatory that the jury instruction would not remedy any consequential prejudice. Therefore, the misconduct did not rise to the level of fundamental error.

## V.  CONCLUSION

We affirm the district court's admission of the booking photo and affirm the district court's denial of Alwin's motion for a new trial. While one of the challenged statements by the prosecutor constituted prosecutorial misconduct, it did not constitute fundamental error. Accordingly, the district court's judgment is affirmed.

Justices HORTON, BRODY and BEVAN, **CONCUR.**

STEGNER, Justice, dissenting in part and concurring in part.

I dissent from the majority's conclusion that "the district court did not erroneously admit the booking photo because the photo did not constitute I.R.E. 404(b) evidence . . ." as set out in Section IV.A.

At trial, and over a proper objection, the trial judge admitted evidence of Alwin's previous incarceration as depicted in a booking photo. Unlike the majority, I view the evidence as subject to I.R.E. 404(b) (similarly to the Idaho Court of Appeals). The process employed by the deputy prosecutor and the judge did not comport with what was required by the Rule, thus, resulting in an abuse of discretion. (It is also hard for me to understand how the majority can conclude the district court did not err in admitting the booking photo because the photo does not

16

constitute I.R.E. 404(b) evidence, when the trial judge herself concluded that she "probably" would have redacted portions of the photo had she appreciated it was a booking photo prior to its admission.) Further, I cannot conclude the evidence was harmless. Accordingly, I would vacate Alwin's conviction, and remand the case to the district court.

The facts are relatively straight-forward. At approximately 1:30 a.m. on August 3, 2015, a Coeur d'Alene police officer (Officer Cohen) spotted a speeding Mercedes automobile and effected a traffic stop. The officer provided the car's Montana license plate to dispatch and approached the vehicle. The stop took twenty-two seconds. The driver never completely lowered the tinted driver's window of the Mercedes. The driver was wearing a hat that he never removed. The driver never looked directly at the officer. At one point, the officer observed approximately three-quarters of the driver's face. After this brief encounter, the driver sped away and was not apprehended in the car, even though the officer and others engaged in a high-speed chase.

Approximately fifteen minutes after he stopped the Mercedes, Officer Cohen accessed the booking photo of Alwin on his car's computer. The color photo depicted Alwin in jail garb (yellow scrubs) with a partially blackened eye. The officer viewed the photo and concluded that the person he had previously stopped was the person depicted in the photograph. Alwin was later charged with felony fleeing or attempting to elude a peace officer in violation of Idaho Code section 49-1404(2). The case went to trial on July 6, 2016, eleven months after the traffic stop.

At trial, the identification of Alwin as the driver of the car in question was hotly contested. Alwin presented an alibi defense, which included his half-brother testifying that Alwin had been with him in Montana at the time of the stop, and consequently could not have been in Coeur d'Alene on the day in question. Defense counsel also presented expert testimony to discredit the officer's post-chase identification.

In the State's case-in-chief, the deputy prosecutor sought the admission of Alwin's prior booking photo. (Curiously and tellingly, the photo was never identified as a booking photo by the deputy prosecutor prior to its admission, even though the deputy prosecutor had an opportunity to do so outside the presence of the jury.) Defense counsel properly objected to the booking photo on the basis of Rule 404(b) of the Idaho Rules of Evidence. The State responded that no conduct was being alleged. The district judge did not do what was required under I.R.E. 404(b) because she did not look closely at the photo and misperceived it as a driver's license

17

photo. The judge admitted it without ever engaging in the two-tiered balancing test that is required under I.R.E. 404(b).

The jury convicted Alwin. He then moved for a new trial contending that the district court erred in admitting the booking photo. Following a hearing, the district judge denied the motion. Alwin was sentenced on the jury's verdict of guilty. On appeal, a unanimous Idaho Court of Appeals concluded the district judge abused her discretion in admitting the booking photo into evidence. The Court of Appeals could not conclude the error was harmless. It ordered that the judgment of conviction be vacated and that the case be remanded to the district court. We granted the State's Petition for Review.

Rule 404(b)(1) of the Idaho Rules of Evidence provides that "[e]vidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." In other words, I.R.E. 404(b) generally prevents a person's history from being used to convict him of the current charge.

> The rationale for this prohibition in a criminal case, is the recognition that such evidence will induce the jury to believe the accused is more likely to have committed the charged crime because the accused is a person of bad character, distracting the jury from the prime consideration of the defendant's guilt or innocence of the particular crime charged.

D. CRAIG LEWIS, IDAHO TRIAL HANDBOOK § 13:5 at 222 (2d ed. 2005) (citing *State v. Shepherd*, 124 Idaho 54, 855 P.2d 891 (Ct. App. 1993)).

There are exceptions to the general rule. In addition, the Rule sets forth a process that must be followed in order for prior bad act evidence to be admitted at trial. Before a prosecutor may seek admission of an accused's prior bad act, he must

> (A) file and serve reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
> (B) do so reasonably in advance of trial – or during trial if the court, for good cause shown, excuses lack of pretrial notice.

I.R.E. 404(b)(2)(A) & (B). This Court has held that the notice requirement in I.R.E. 404(b) is mandatory and failure to give advance notice would bar the admission of such evidence. *State v. Sheldon*, 145 Idaho 225, 230, 178 P.3d 28, 33 (2008).

Admissibility under I.R.E. 404(b), after the evidence is brought to the judge's attention prior to trial, is subject to a two-tiered analysis. *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009). The first tier has two steps. *Id.* The trial judge must first determine that the fact of

18

the crime or wrong has been established. *Id.* If the fact of the crime or wrong can be established, the trial judge must next determine if admitting that evidence would be relevant. *Id.* "Evidence of uncharged misconduct must be relevant to a material and disputed issue concerning the crime charged, other than propensity." *State v. Field*, 144 Idaho 559, 569, 165 P.3d 273, 283 (2007). "Such evidence is only relevant if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Grist*, 147 Idaho at 52, 205 P.3d at 1188 (citing *United States v. Beecham*, 852 F.2d 898 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920 (1979)).

If this first hurdle is overcome, the trial judge must then undertake a balancing under I.R.E. 403 to "determine whether the danger of unfair prejudice outweighs the probative value of the evidence." *Id.* (citing M. CLARK, REPORT OF THE IDAHO STATE BAR EVIDENCE COMMITTEE, Ch. 404, p. 4 (4th Supp. 1985); *State v. Sheahan*, 139 Idaho 267, 275, 77 P.3d 956, 964 (2003) (citations omitted).

Given that process as a background, here is what was and was not done in Alwin's case: the deputy prosecutor did not apprise the trial judge that the evidence sought to be admitted was evidence of the defendant's prior bad act, nor did he even identify it as a booking photo.

Much has been said about whether the booking photo appears to be what it undoubtedly is, a booking photo. The photo depicts Alwin in yellow scrubs with a partially blackened eye. It does not contain other indicia of a booking photo, such as a background depicting the subject's height as is sometimes included, nor does it have numbers or a name placard, or an identification of either the subject or the arresting agency as is also sometimes seen. What it does show is Alwin in yellow scrubs with a partially blackened eye. It was also identified as having been accessed by the officer on his police cruiser's computer. Given the context in which it was identified and introduced, it appears likely that the photo would have been perceived as what it was, a booking photo, evidencing a prior arrest.[3] In other words, it was precisely the type of evidence that can be misused by a jury. It is also precisely the type of evidence I.R.E. 404(b) is intended to address.

---

[3] Some have suggested the photo could just as easily be a driver's license or a passport photo. The majority has concluded the booking photo did not constitute I.R.E. 404(b) evidence. However, I have never seen either a driver's license or a passport photo depicting someone with a partially blackened eye or in scrubs, yellow or otherwise. I think anyone who regularly watches television, accesses the internet, or reads a newspaper would recognize it as a booking photo or mug shot. Particularly, given that it was contained in and identified as being from the data bank accessible to the police.

19

The colloquy between counsel and the trial judge that occurred during trial and prior to the photo being offered is instructive as to what the deputy prosecutor did and did not do.[4] The deputy prosecutor, Mr. Whitaker, acknowledged that he sought to have admitted at least two photos: with regard to the first, the booking photo that was admitted over defense counsel's objection, the following statement was made:

> I don't think there's a problem. It's the photo that Officer Cohen looked at and was admitted at the prelim[inary hearing] shortly after the alleged defendant – the person who drove off took off. So this is what he used to verify the person he saw about 15 minutes after he left. So I don't think there's going to be an issue with this, *but the issue is with the jail booking photos.*

(Emphasis added). The clear implication from the deputy prosecutor's statements is that the photo he sought to admit, and with which he did not think there was a problem, was *not* a booking photo. As is now obvious, that implication is misleading at best. (Elsewhere in this opinion I deal with the issue of prosecutorial misconduct, specifically during closing argument. I think misleading the court, whether done wittingly or unwittingly, constitutes prosecutorial misconduct, and is a more egregious error, than that which occurred during closing.)

In actuality, the deputy prosecutor sought to introduce at least two photos, both of which were booking photos. One involved a booking photo from a *prior* crime, which clearly implicates I.R.E. 404(b). The other involved the booking photo created as a result of the charge of eluding brought in this case, which in the scheme of things is less problematic than the photo from a *prior* arrest. Ultimately, the trial judge did not admit the latter booking photo, the one generated as a result of the underlying eluding case, due to a discussion on the record and a compromise being entered into by counsel prior to it being offered. However, the booking photo from the *prior* arrest was admitted. Evidence of a previous arrest is more unfairly prejudicial

---

[4]    MR. WHITAKER [the deputy prosecutor]: Briefly, Your Honor, there's a couple photographs the State intends on getting in. The first one [the booking photo at the heart of this appeal] is – I don't think there's a problem. It's the photo that Officer Cohen looked at and was admitted at the prelim[inary hearing] shortly after the alleged defendant – the person who drove off took off. So this is what he used to verify the person he saw about 15 minutes after he left. So I don't think there's going to be an issue with this, but the issue is with the jail booking photos. And so I have subpoenaed Officer Shank down here, because one of the issues here that Officer Cohen noticed was a tattoo, and Mr. Logsdon [defense counsel] voir dired briefly on it, anybody have any issues with tattoos.

I intend on getting these in, and normally I would not do that. These are booking photos. But the defense essentially placed it at issue by claiming an alibi defense, and so I think these do come into evidence and they are relevant. And Mr. Logsdon and I we've done a pretty good job of working most things out, but we're going to have a dispute over these. So we were just kind of looking to make this go a little smoother, maybe a salvo from the Court on what the Court intends to do, whether we get these in or not.

than a booking photo generated from the eluding charge, because the jury can logically infer that Alwin was arrested due to the underlying charge. It is exponentially more prejudicial to Alwin to admit his booking photo from a *prior* arrest because it implies a *prior* bad act (which is what I.R.E. 404(b) prohibits).

Because the process required by I.R.E. 404(b) was not followed, the judge could not make the threshold determination. She could not assess "whether there is sufficient evidence to establish the other crime or wrong as fact." *Grist*, 147 Idaho at 52, 205 P.3d at 1188. In fact, that determination has *never* been made. Alwin's prior booking photo was admitted and shown to the jury without this initial determination having ever been made.

The next determination that needed to be made (assuming the judge concluded that a wrong or crime had actually been committed by Alwin), was whether introduction of that evidence was "relevant to a material and disputed issue concerning the crime or wrong" charged. *Grist*, 147 Idaho at 52, 205 P.3d at 1188.

And finally, if the first part of the two-tiered test was met, the judge was obliged to weigh whether the danger of unfair prejudice substantially outweighed the probative value of the evidence. *Grist*, 147 Idaho at 52, 205 P.3d at 1188.

The majority opinion states that adopting Alwin's argument would create an absolute bar to the use of a booking photo or mug shot at a trial in the future. I respectfully disagree. The remedy Alwin seeks is to require the deputy prosecutor and the trial judge to follow the Idaho Rules of Evidence, which was not done at his trial. This Court should require that any recognizable booking photo go through the process set out in I.R.E. 404(b) and the two-tiered test outlined in *Grist* before it is admitted. If the judge makes the determination that the booking photo satisfies the standard, then the booking photo would be admissible. However, this was not the case here. We frequently state that a defendant is not entitled to a perfect trial, but is entitled to one that is fair. *See State v. Ellington*, 151 Idaho 53, 62, 253 P.3d 727, 736 (2011) (citation omitted). Under these circumstances, I cannot conclude Alwin received a fair trial.

Here, the deputy prosecutor did not apprise the court prior to trial (as is required by the Rule, unless good cause is shown) of his intention to offer a booking photo in evidence. It is unclear why he brought one booking photo to the attention of the trial judge, but kept that information from her with regard to another. It is also unclear why the deputy prosecutor never showed the booking photo that was admitted into evidence to the judge prior to it being shown to

21

the jury. The defense attorney recognized the evidence as subject to I.R.E. 404(b) and voiced his objection in a timely way. The trial judge did not recognize the booking photo for what it was, and admitted it over proper objection without ever getting a close look (and without ever being told it was a booking photo). It was not until after the trial that the judge was presented with the fact that the photo was taken when Alwin was arrested and booked into the Kootenai County jail on a *previous* charge.

The trial judge also mistakenly put the blame for the admission of the evidence on defense counsel. As noted by the defense attorney, Mr. Logsdon, during the hearing on the motion for a new trial:

> I didn't make a speaking objection because I consider most courts frown upon them and I just don't think they're the correct thing to do. So I made a simple objection under 404(b), the State responded, and the Court made it's [sic] ruling, and the photograph was before the jury rather quickly thereafter.

The trial judge responded to counsel's statement in the following way:

> In addition, the objection -- and I certainly appreciate, Mr. Logsdon, absolutely appreciate your not giving speaking objections, particularly in a jury trial, but there are alternatives to that. This objection doesn't state the grounds, in my view, well enough. And I didn't understand it. Now, that could be on me, but there are ways to present that to the Court, and one of those ways is to say, Judge, I think we need to have a discussion outside the presence of the jury, we excuse the jury, we have the discussion so that we can take up the objection.

The defense attorney did what was required of him. To require more evidences a misunderstanding of the Rule. The prosecutor is obliged to bring 404(b) evidence to the court's attention prior to trial. If he does not, he is required to demonstrate "good cause" for that failure if he hopes to have the evidence admitted. Failure to comply with the Rule renders the evidence inadmissible. *Sheldon*, 145 Idaho at 230, 178 P.3d at 33. Here, he did not bring it to the court's attention even though he did so with a different booking photo. To suggest the defense attorney could have or should have done more, impermissibly shifts the responsibility for the oversight to the wrong party. The rule clearly puts the responsibility on the prosecution. To shift that burden, as the trial judge did, constitutes an abuse of discretion.

I also think the majority's reliance on *State v. Cunningham*, 97 Idaho 650, 653, 551 P.2d 605, 608 (1976), and *State v. Carter*, 103 Idaho 917, 921, 655 P.2d 434, 438 (1981) is misplaced for several reasons. First, *Cunningham* and *Carter* both predate Idaho's adoption of its Rules of

22

Evidence. *See generally* M. CLARK, REPORT OF THE IDAHO STATE BAR EVIDENCE COMMITTEE (1983). Consequently, they are of no precedential value in analyzing this case.

Second, the booking photos admitted in *Carter* and *Cunningham* are distinguishable from Alwin's photo. First, the booking photo admitted in *Carter* was taken at the time of the defendant's arrest for the crime on which he was being tried. *Carter*, 103 Idaho at 921, 655 P.2d at 438. Even though, as stated above, I.R.E. 404(b) had not been adopted, the Rule would not necessarily have been implicated because it was not evidence of a *prior* bad act.

In *Cunningham*, it is unclear exactly when the photo was taken that was presented to the jury, however, this Court noted "it is just as likely that the jury assumed [the photo had been] taken by the police when the appellant was arrested on the charges for which he was presently being tried." *Cunningham*, 97 Idaho at 653, 551 P.2d at 608. Additionally, and importantly, the judge in that case gave a limiting instruction stating, "the photograph merely showed that appellant had been arrested and that it was not to be considered evidence that appellant had any prior criminal record." *Id.*

In this case, Alwin was purportedly identified from his booking photo taken from a *prior* arrest. Since the jury was told the officer accessed the photo fifteen minutes after the traffic stop, the jury could only infer that the photo admitted during the trial was from a prior booking. As stated previously, I.R.E. 404(b) was created to avoid this very misuse. Further, there was no limiting instruction, as the district court did not recognize the prejudicial nature of the photo being introduced. The *Cunningham* and *Carter* decisions are not comparable to this case, and are not useful in determining whether I.R.E. 404(b) should apply in this case.

In conclusion, I believe the district court abused its discretion by failing to apply the required applicable legal standards to I.R.E. 404(b) evidence. As the judge failed to recognize the booking photo as implicating I.R.E. 404(b) and failed to perform the proper analysis, she did not do what was required under the rules. I cannot conclude the error in admitting the booking photo was harmless. I would reverse and remand just as the Court of Appeals did.

I concur with the portion of the majority's opinion in which the Court concludes that prosecutorial misconduct (not relating to the introduction of the booking photo) did not rise to the level of fundamental error as set out in Section IV.B.

I write separately to note that I would hold that there was also prosecutorial misconduct in regard to the following statements made by the deputy prosecutor:

> I guarantee if I walked him in here at the beginning of this case, had him stand there and look at you and then look away for 20 seconds, starting now, when you saw a picture of him 15 minutes later and said, That's the guy, you're all going to pick him out, because it's him.

He then said, "[a]nd I guarantee you one thing: It's not two Russian guys, one of two Russian guys who looks slightly like him. It didn't happen that way."

Although it is true that a prosecutor is permitted to explain from his or her own perspective how evidence either confirms or calls into doubt the credibility of a particular witness, using a phrase like "I guarantee" is particularly concerning for the effect it has on the jury. The phrase "I guarantee" is on the wrong side of the ledger when it comes to the use of personal opinions. When the prosecutor guarantees something, that creates an inference that should not be allowed. *See State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017) (citing *State v. Garcia*, 100 Idaho 108, 110 n.1, 594 P.2d 146, 148 n.1 (1979)).

While I take issue with such phrases being used in closing arguments, I cannot say that the statements rose to the level of fundamental error in this case. Here, the district court gave a jury instruction stating, "what [lawyers] say in their . . . closing arguments . . . is included to help you interpret the evidence, but it is not evidence." Similar to the other instance of misconduct noted by the majority, it likely does not rise to the level of "egregious and inflammatory" language that could not be remedied by the jury instruction. Therefore, the misconduct does not rise to the level of fundamental error, and thus, is not reversible. Consequently, I concur with the outcome of the majority that we should not reverse and remand on the grounds of prosecutorial misconduct.